BIES, Plaintiff in error, v. STATE, Defendant in error.

*No. 75–746–CR. Submitted on briefs February 2, 1977.—*
*Decided March 15, 1977.*
(Also reported in 251 N. W. 2d 461.)

For the plaintiff in error the cause was submitted on the briefs of *Howard B. Eisenberg,* state public defender.

For the defendant in error the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Marguerite M. Moeller,* assistant attorney general.

ABRAHAMSON, J.    Stanley A. Bies, hereinafter referred to as the defendant, was charged with stealing approximately $1,100 worth of telephone cable belonging to the Wisconsin Telephone Company from a construction site in Walworth county. Sec. 943.20 (1) (a), Stats.[1] He was convicted upon a plea of guilty, which was entered following denial of his motion to suppress certain evidence seized in a search of his garage on January 25, 1975.    Pursuant to sec. 971.31 (10), Stats., defendant obtained a writ of error to review the trial court's denial of that motion.

The chief witness at the suppression hearing was Eric M. Johnson, a police officer of the city of Burlington. The officer testified that shortly after midnight in the

---

[1] Sec. 943.20 (1) (a), Stats.: "(1) ACTS.  Whoever does any of the following may be penalized as provided in sub. (3):

"(a) Intentionally takes and carries away, uses, transfers, conceals, or retains possession of movable property of another without his consent and with intent to deprive the owner permanently of possession of such property."

early morning hours of January 25, 1975, while he was on patrol, he received a radio message directing him to investigate a noise complaint in an alley in a garage in the 500 block of West State street. Defendant's residence was located at 533 West State street, but access to his garage was via an alley south of State street apparently running parallel thereto. Johnson testified that the message specified that the noise was "in the area of the Stanley Bies garage." It was brought out on cross-examination, however, that at the preliminary examination Johnson had testified that the message had not specified any particular location: "just in the alley there in one of the garages." The officer testified he was familiar with the defendant's residence and garage and had been there before.

After receiving the message he drove his squad car to the alley and proceeded into the alley in a westerly direction. A light was on inside defendant's garage at this time, but the light went out as the officer's car approached the garage. This light was the only one the officer remembered seeing in the alley. The officer pulled up in front of the garage's overhead doors, which faced the alley, set back from it about 15 feet, and got out of his car to see what was going on inside.

The officer testified that he attempted to look into the garage through the windows in the overhead doors, using his flashlight, but he was unable to see anything due to dirt and moisture on the glass. He then went to a window on the east side of the garage but again could not see through the glass. The officer then proceeded to the rear of the garage where he found a walk-in doorway, not visible from the alley, from which the door was missing. Upon shining his flashlight in the doorway he observed an estimated 25 to 50 feet of what he recognized as 3 inch telephone cable lying around, in pieces, as well as an axe, some broken concrete blocks, and a Plymouth station wagon. At this point, without having entered the

garage, the officer returned to his squad car and informed police headquarters of what he had observed. He was joined at the scene by another officer, Sergeant Himberg, and the two men then entered the garage, found no one present, seized a piece of the cable for possible use as evidence, and returned to the police station. Neither officer had permission to be on the premises, nor did they have a warrant.

At no point while the officer was in the alley did he hear any noise. There had been no thefts of telephone cable (or apparently of anything else) reported to the police. The officer testified that he had formerly been employed for six months by the Western Electric Company at a plant that manufactured telephone cable, and that he recognized the cable in the defendant's garage as telephone cable. He further stated that "I realize from my past experience that the only part[y] who can obtain cable like that is the telephone company." A defense objection that the officer was not qualified to give the quoted testimony was overruled, the court stating that such testimony was proper for a lay witness.

After leaving defendant's garage the officers took the piece of cable to the police station and went out along Highway 11 to a point where the officers knew that underground cable was being laid. They found various indications that someone had chopped up and removed cable from the site.

The sole question in this case is whether the police officers' observation of the telephone cable in defendant's garage and the seizure of a piece of the cable were in violation of defendant's rights under the Fourth Amendment to the United States Constitution to be free from unreasonable search and seizure.

It is not disputed that the interior of defendant's garage was within the Fourth Amendment's protection. The garage was located within the curtilage of his dwelling, and it was not in any sense a semi-public area. The

overhead garage door facing on the public alley was shut, reflecting a reasonable expectation of privacy as to the interior of the garage. The open door at the rear of the garage, facing toward the interior of defendant's lot and invisible from the street, did not indicate the contrary. *See Conrad v. State,* 63 Wis.2d 616, 625–634, 218 N.W.2d 252 (1974) ; *Ball v. State,* 57 Wis.2d 653, 659–664, 205 N.W.2d 353 (1973).

The United States Supreme Court has stated that "the most basic constitutional rule in this area" of search and seizure is that searches conducted without a warrant are *per se* unreasonable, subject only to a few specific and well-delineated exceptions ; the exceptions to the rule are "jealously and carefully drawn ;" and the burden of showing that a case falls within an exception is upon the state. *Coolidge v. New Hampshire,* 403 U.S. 443, 454, 455, 91 S. Ct. 2022, 29 L. Ed.2d 564 (1971) ; *State v. Pires,* 55 Wis.2d 597, 603, 201 N.W.2d 153 (1972).

There was no warrant issued to search defendant's garage. The trial court was of the opinion that if the seizure herein was to be upheld, it would be under the "plain view" doctrine, and the state does not here urge any other justification. This seems correct.

The "plain view" exception to the warrant requirement may justify a seizure only where the following criteria are met:[2]

---

[2] In *State v. Pires, supra,* 55 Wis.2d at 607, the court quoted *Coolidge, supra,* p 465:

"It is well established that under certain circumstances the police may seize evidence in plain view without a warrant. But it is important to keep in mind that, in the vast majority of cases, *any* evidence seized by the police will be in plain view, at least at the moment of seizure. The problem with the 'plain view' doctrine has been to identify the circumstances in which plain view has legal significance rather than being simply the normal concomitant of any search, legal or illegal."

(1) The officer must have a prior justification for being in the position from which the "plain view" discovery was made;

(2) The evidence must be in plain view of the discovering officer;

(3) The discovery of the evidence must be inadvertent; and

(4) The item seized, in itself or in itself with facts known to the officer at the time of the seizure, provides probable cause to believe there is a connection between the evidence and criminal activity. *Coolidge v. New Hampshire, supra,* 403 U.S. at 464–473; *State v. Elam,* 68 Wis.2d 614, 621, 622, 229 N.W.2d 664 (1975); *Day v. State,* 61 Wis.2d 236, 248, 212 N.W.2d 489 (1973).[3]

The key question here is that of prior justification: Did Officer Johnson have a right to go to the rear of defendant's garage and place himself in a position such that he could, with the aid of his flashlight, observe objects in plain view on the garage floor? We note at the outset—and defendant does not dispute—that Fourth

---

[3] *See Myers v. State,* 60 Wis.2d 248, 261, 208 N.W.2d 311 (1973), adopting four standards with respect to the seizure of property from *United States v. McDonnell,* 315 F. Supp. 152, 168 (D. Neb. 1970):

" '. . . An officer may seize any property which is evidence of a crime, whether or not different from the crime by which the search was prompted, if: (1) the evidence is discovered in the course of a lawful search, whether initiated by a valid search warrant, a valid arrest warrant, circumstances justifying a lawful warrantless search, or circumstances justifying a lawful warrantless arrest, (2) the evidence in itself or in itself with facts known to the officer prior to the search, but without the necessity of subsequent development of additional facts, provides a connection between the evidence and criminal activity, (3) the evidence is discovered in the physical area properly searchable within the purposes for which the search was initiated, and (4) the evidence is discovered while the officer is actually searching for objects within the purpose for which the search was initiated.' "

Amendment questions do not turn on whether a civil trespass was committed by the police.[4] The trial court took the view, urged here by the state, that the officer's conduct was justifiable as a reasonable investigation in response to the noise complaint radio message and the extinguishment of the garage light as the officer approached the garage. In urging the contrary defendant emphasizes that the noise complaint was anonymous and unspecific, that the officer heard no noise and saw no evidence of improper activity when he arrived, and that there had been no reports of crime in the area. Defendant appears to concede that the officer could properly have approached the garage and looked into the windows in the overhead door, which faced the street, but defendant disputes his right to have gone around behind the garage to the rear doorway.

It is undisputed that Officer Johnson did not have probable cause to believe that a crime was being committed by defendant or anyone else when he arrived at the garage. However, the freedom of the police to act is not limited to cases where there is probable cause as to the commission of crime. Police have the right to undertake "legitimate and restrained investigative conduct . . . on the basis of ample factual justification" even though that justification falls short of what would be required to support arrest or formal search. *Terry v.*

---

[4] *Conrad v. State*, 63 Wis.2d 616, 624, 625, 218 N.W.2d 252 (1974). *See Browne v. State*, 24 Wis.2d 491, 508, 129 N.W.2d 175 (1964), cert. den. 379 U.S. 1004, where the court said:

"[W]hether or not a search or investigation is reasonable is not a matter for the application of the comparatively rigid rules of tort and property law, but is rather a matter of an inquiry as to whether the search or investigation is constitutionally reasonable under the circumstances. If police conduct is not considered unreasonable in the circumstances, it is not made unreasonable if it is deemed to have involved a civil trespass."

*Ohio,* 392 U.S. 1, 15, 88 S. Ct. 1868, 20 L. Ed.2d 889 (1968). In *Terry* the Court recognized the existence of

> "[a] rubric of police conduct . . . which historically has not been, and as a practical matter could not be, subjected to the warrant procedure. Instead, the conduct involved . . . must be tested by the Fourth Amendment's general proscription against unreasonable searches and seizures." 392 U.S., at 20.

In *Browne v. State,* 24 Wis.2d 491, 507, 129 N.W.2d 175 (1964), cert. den. 379 U.S. 1004, this court acknowledged that police may investigate claims of crime on evidence not sufficient to justify an arrest, and stated:

> "Although the Fourth Amendment and sec. 11, art. I [Wis. Const.] protect against police invasion of privacy, police officers should be permitted to conduct a reasonable investigation when their suspicion has been reasonably aroused. Whether an inquiry is considered reasonable must depend upon the facts in each case and must turn on the application of what is essentially an indeterminate and flexible test."

The standard is an objective one:

> "[W]ould the facts available to the officer at the moment . . . 'warrant a man of reasonable caution in the belief' that the action taken was appropriate?" *Terry v. Ohio, supra,* 392 U.S. at 21, 22.
> "[I]n determining whether the officer acted reasonably . . . due weight must be given, not to his inchoate and unparticularized suspicion or 'hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience." *Id.,* at 27.

The test contemplates a balancing of the nature of the intrusion upon the privacy of the individual against the interests of the state or the public sought thereby to be served. *Terry v. Ohio, supra,* 392 U.S. at 22–27. Where any such intrusion is to be accomplished without prior

judicial approval, it is a cardinal rule that the intrusion must be confined by the legitimate purpose it is to serve, and must be as limited as reasonably possible consistent with that purpose. *State v. Pires, supra,* 55 Wis.2d at 606; *Coolidge v. New Hampshire, supra,* 403 U.S. at 467.

Although the situation presented in this case is dissimilar to that of *Terry*[5] or *Browne,*[6] and although neither *Terry* nor *Browne* was a "plain view" case, these cases do stand for the proposition that reasonable, appropriately minimized intrusions into the privacy guaranteed by the Fourth Amendment may be justified by circumstances falling short of the probable cause necessary to

[5] In *Terry v. Ohio,* 392 U.S. 1, 15, 88 S. Ct. 1868, 20 L. Ed.2d 889 (1968), the United States Supreme Court held that a police officer who had observed several persons acting in a manner reasonably suggesting that they were about to rob a store (though not amounting to probable cause for arrest) could detain such persons temporarily for purposes of investigation, and where it was reasonable to suspect that they might be armed, the officer could conduct a limited "pat-down" for weapons to assure his own safety.

[6] In *Browne v. State,* 24 Wis.2d 491, 129 N.W.2d 175, 131 N.W. 2d 169, cert. den. 379 U.S. 1004 (1964), the police, acting on the basis of an anonymous telephone tip that the defendant was using narcotics in the room he occupied in a rooming house, went to the defendant's address, were admitted to the building by another resident, and were taken to a shared kitchen adjoining the defendant's room. Defendant's door was open, and the police were able to see him lying on his bed. When the police called out defendant's name they observed him pick up narcotics paraphernalia and throw them behind the bed. Defendant was then placed under arrest. This court held that even though the anonymous phone call did not constitute probable cause, the officers' conduct constituted a reasonable investigation which warranted the limited invasion of privacy the defendant suffered from having the officers brought to the threshold of his room without his affirmative consent. This court rejected the view that what is otherwise reasonable police conduct becomes unreasonable if it involves a civil trespass.

support arrest or search. The ultimate standard under the Fourth Amendment is the reasonableness of the search or seizure in light of the facts and circumstances of the case. *State v. Elam,* 68 Wis.2d 614, 621, 229 N.W.2d 664 (1975) ; *Cady v. Dombrowski,* 413 U.S. 433, 439, 93 S. Ct. 2523, 37 L. Ed.2d 706 (1973). The determination whether police conduct is constitutionally reasonable in a given case must be made by application of "what is essentially an indeterminate and flexible test." *Browne v. State, supra,* 24 Wis.2d at 507.[7]

---

[7] In *Jackson v. State,* 29 Wis.2d 225, 227–230, 138 N.W.2d 260 (1965), it was held that the police had acted reasonably when, based upon an entry in the police department daybook to the effect that one Edwards used narcotics in a specified room, two officers went to Edwards' address and from a position on the porch observed Edwards and the defendant through a window under circumstances indicating that Edwards was encouraging the defendant to violate her parole (which is a crime). The court noted that the daybook entry had identified Edwards' room such that the officers knew the window into which they were looking was his, and further noted that in making the observation the police had not invaded that part of the building leased to Edwards. The foregoing police conduct was again upheld in *Edwards v. State,* 38 Wis.2d 332, 340, 341, 156 N.W.2d 397 (1968), the court saying:

"When the officers left the station after examining the log-book, they may not have had probable cause to arrest defendant or to obtain a warrant to search Edwards' room. But the officers did have a reasonable basis for conducting a reasonable investigation following up that information from the logbook entry . . . .

". . . The police officers directed their eyes through the window as they ascended the staircase. This was not unreasonable conduct."

That the scope of reasonable police action follows a gradation based upon the circumstances was reaffirmed by the United States Supreme Court in *Adams v. Williams,* 407 U.S. 143, 92 S. Ct. 1921, 21 L. Ed.2d 612 (1972). There an informer known to the officer involved told the officer that a man sitting nearby in a car had narcotics, and had a pistol at his waist. The officer went over to the car and asked the man to open the door, where-upon he rolled down the window instead. The officer then

The inquiry, then, is whether upon an objective analysis of the circumstances confronting Officer Johnson, including the nature and reliability of his information, it can be said that his conduct was reasonable and justified. The test entails a balancing of the public needs and interests furthered by his conduct against the degree of and nature of intrusion upon the privacy of the defendant, which balancing is undertaken in light of the principle that any warrantless intrusion must be as limited as is reasonably possible consistent with the purpose justifying it in the first instance. On review of an order suppressing evidence, the findings of fact, if any, of the trial court will be sustained unless against the great weight and clear preponderance of the evidence. *State v. Pires, supra,* 55 Wis.2d at 602, 603. However, this court will independently examine the circumstances of the case to determine whether the constitutional requirement of reasonableness is satisfied. *See State v. Carter,* 33 Wis.2d 80, 89–96, 146 N.W.2d 466 (1966), *cert. denied* 387 U.S. 911; *Ker v. California,* 374 U.S. 23, 33, 34, 83 S. Ct. 1623, 10 L. Ed.2d 726 (1963).

Defendant relies almost exclusively on *Ball v. State,* 57 Wis.2d 653, 205 N.W.2d 353 (1973). In that case the police went to the defendant's home after he had been arrested for theft of a camping trailer, and, without obtaining consent or a warrant, went through the contents of a trash barrel located behind defendant's house; incriminating evidence was found. They also looked

reached under the man's coat and found the pistol at his waist. It had not been visible. The Court conceded that the informant's tip would not have justified a narcotics arrest or a search warrant, but noted that informants' tips would vary greatly in their value and reliability, and that the tip there presented "a stronger case than an anonymous phone tip." The Court held that the tip carried "enough indicia of reliability" to justify the officer's conduct."

through the windows of a locked storage trailer parked about 20 feet from the house and saw objects apparently taken from the stolen camper. The police then obtained the key to the trailer from the defendant's personal effects at the jail, unlocked the trailer, and seized the stolen items. The objects taken from the trash barrel and the testimony of the officers as to what they saw in the storage trailer, but not the items themselves, were admitted in evidence at the trial. This court held that none of the evidence should have been admitted. The trash barrel was on the curtilage of defendant's house, was within his reasonable expectation of privacy, and its contents had not, as the state contended, been abandoned. The state made no claim that the plain view doctrine applied to the items in the barrel. With respect to the storage trailer, the court held the plain view doctrine inapplicable where the state had not even suggested the existence of a prior justification for the police to have been looking into the trailer. It was also held that the discovery was not inadvertent; the officers were obviously looking about in the hope of finding evidence to incriminate the defendant as to the crime charged. *Ball,* an after-arrest search, has little relevance to the case at bar, which is a minimal police investigation in response to a noise complaint. Unlike *Ball,* the State here claims a prior justification for the officer's presence at the door of defendant's garage. The question is whether that claim may be sustained.

When Officer Johnson arrived at the alley, he had only the information that someone was making noise shortly after midnight in the alley on which is located the defendant's garage. This information was received from an anonymous telephone caller; it therefore was not possessed of even minimal "indicia of reliability." Moreover, making noise at night is not generally a crime (though it might rise to the level of disorderly conduct contrary to sec. 947.01, Stats.). Nor was the noise tied

to a situation which might indicate a crime was being committed—a scream of help or the noise of a fight.

It is apparent that the information the officer had could justify little police intrusion upon the privacy of a citizen. However, it undoubtedly justified at least some response by the police. Checking noise complaints bears little in common with investigation of crime. As a general matter it is probably more a part of the "community caretaker" function of the police which, while perhaps lacking in some respects the urgency of criminal investigation, is nevertheless an important and essential part of the police role. A brief word from an officer, or in some cases his mere presence, often will put an end to disturbing behavior which otherwise might lead to serious breaches of the peace or worse. The officer was clearly justified in proceeding to the alley in question and conducting a general surveillance of the area to determine whether some noise or other disturbance was present.

When he arrived the officer heard no noise, but he saw a light in the defendant's garage, which light went out shortly before he reached the garage. This was the only light on in the alley. The state characterizes this situation as suspicious, the inference being that the light was turned out because someone in the garage was aware that the officer was approaching, and suggests that the officer might reasonably have suspected that a burglary was in progress. The time was shortly after midnight. Importing criminal overtones on this state of facts seems a bit far-fetched.

Nevertheless, it does not necessarily follow that the police officer could not have investigated further. It is true that he heard no noise at this time, but he was not required immediately to assume that the noise, which might have been of an intermittent character, would not begin again. The light suggested that someone was up and about in the garage, and in view of the fact that this was the only light on in the area where the noise was re-

ported, the officer could reasonably have suspected that the garage was the source of the noise, or, at the least, that whoever was there might know where the disturbance had been. It was reasonable for the officer to have approached the garage to find out if anyone was there and to question anyone he found regarding the noise complaint. Further, he reasonably could have gone for this purpose to the walk-in door of the garage, rather than the overhead automobile door. Had the walk-in door been shut, he would not have been justified in opening it without an invitation, but as it was, the door was altogether absent and the telephone cable was in plain view as the officer stood in front of the empty doorframe.

Approval of the minimal investigation described above is a reasonable balance between individual privacy and the public interest in allowing the police a reasonable scope of action in the discharge of their responsibility for general maintenance of peace and order in the community. The intrusion into defendant's privacy was minimal in time and space, and was reasonably limited to the purpose of ascertaining the source of the reported noise. To go upon private lands in this way at night might be a more serious intrusion than to do so during the day. *See Ball v. State, supra,* 57 Wis.2d at 665, 666. However, the need of the police to be able to make limited inquiries respecting minor complaints or similar matters with reasonable convenience is nevertheless sufficient to justify the minor sacrifice of privacy involved in this case. We conclude that the officer's conduct was reasonable under the circumstances; he therefore had the requisite prior justification to be where he was when he observed the incriminating evidence. The first requirement of the plain view doctrine is satisfied.

The second element of the plain view exception is that the evidence be in plain view of the discovering officer. In this case the evidence (the cable) was lying on the

floor of the garage. The officer could see it from his position outside the empty doorframe by illuminating the interior of the garage with his flashlight. This court has held that an officer "may use a flashlight to bring into plain sight what natural light would have revealed if the 'look-see' had taken place in daylight." *Warrix v. State,* 50 Wis.2d 368, 374, 184 N.W.2d 189 (1971); *State v. Bell,* 62 Wis.2d 534, 541, 215 N.W.2d 535 (1974). The officer did not use his flashlight to peer into hidden recesses. He simply illuminated what would have been well illuminated and obvious at a glance during daylight hours. The cable was in plain view.

Defendant argues that the third requirement—that the discovery be inadvertent—is not here met. The defendant's brief contends that "the search of the garage was clearly intended to determine what was in the building— it was no accidental or inadvertent act." The officer testified that he approached the garage "to see what was going on inside."

Inadvertence, as used here, does not require that the discovery result from wholly undirected police conduct. Rather the requirement of inadvertence is designed to eliminate abuse of the plain view exception by what the United States Supreme Court in *Coolidge v. New Hampshire* termed a *"planned* warrantless seizure."  403 U.S. at 471, n. 27.

". . . 'Inadvertent' in terms of the plain-view doctrine means among other things, that a discovery cannot be anticipated.  The police cannot know in advance the existence and location of the evidence and intend to seize it.  In such case, the police must get a warrant unless there are exigent circumstances." *State v. Bell,* 62 Wis.2d 534, 542, 215 N.W.2d 535 (1974).

The requirement of inadvertent discovery is directed in the main at cases where it appears the police have used the plain view doctrine deliberately as a circumven-

tion of the requirement of procuring a warrant or as a pretext for a general exploratory search. The evidence in the instant case does not support such a finding. When the officer arrived at defendant's premises neither he nor anyone else on the police force knew or suspected that cable had been stolen, or that it was then reposing on the floor of defendant's garage. There is no evidence that the officer was specifically looking for or expecting to find incriminating evidence of any sort in the garage. Nor can a glance through the doorway be called a general exploratory search. Though the officer's looking into the garage was not inadvertent, his discovery of the cable therein was. The "inadvertence" requirement is satisfied. See State v. Bell, supra, 62 Wis.2d at 542; State v. Taylor, 60 Wis.2d 506, 516, 517, 210 N.W.2d 873 (1973).

We conclude that Officer Johnson's observation of the cable in defendant's garage was constitutionally reasonable; satisfaction of the first three requirements of the plain view doctrine so establishes. However, an officer may not seize an object merely because it has fallen within his view. The object must be connected to the commission of crime, and the officer must have probable cause to believe that this is so; thus the fourth criterion set forth above. The plain view doctrine excuses the requirement of a warrant, but it does not permit the police to effect a seizure without probable cause. See Myers v. State, supra, note 3; United States v. Gray, 484 F.2d 352, 356 (6th Cir. 1973), cert. den. 414 U.S. 1158; United States v. Clark, 531 F.2d 928, 932 (8th Cir. 1976); United States v. Truitt, 521 F.2d 1174, 1176 (6th Cir. 1975); United States v. Wilson, 524 F.2d 595, 598 (8th Cir. 1975); United States v. Sokolow, 450 F.2d 324, 325, 326 (5th Cir. 1971).

When the police arrived at defendant's garage they had no knowledge that any cable of the type they observed

had been stolen; the officers did not visit the construction site until later. Nor is possession of such cable a crime in and of itself.

Officer Johnson testified that he knew from his prior experience as an employee of Western Electric that the cable was telephone cable, and that it could not be legally obtained by parties other than telephone companies. It is perhaps common knowledge that possession of 3-inch telephone cable by private citizens is somewhat unusual. However, Johnson testified that it was impossible, legally. It was not shown that he had any personal knowledge upon which to base this assertion, and it is not something that a layman would know, or that Officer Johnson could reasonably be supposed to know merely because he had worked in an unspecified capacity for Western Electric. This testimony alone probably would not have justified seizure of the cable. But in addition to the unusual circumstance of private possession of the cable, it appears that the officers also knew that telephone cable was being laid, and was therefore vulnerable to theft, at a nearby location. Moreover, Johnson could have inferred that someone had been in the garage and had turned out the light a very short time before he approached the building. Though this may not have been suspicious in itself, when no one appeared on his approach he could reasonably have inferred that such person was deliberately avoiding contact with him—hiding nearby, perhaps inside the garage itself.

The requirement of probable cause does not demand that Officer Johnson have had knowledge showing that there had been a theft beyond a reasonable doubt. The test is whether he had knowledge that would lead a reasonable police officer to believe it probable that the cable was stolen. *Molina v. State,* 53 Wis.2d 662, 671,

193 N.W.2d 874 (1972). We believe the test is satisfied on the foregoing facts. This being so, all requisites for seizure of the cable under the plain view doctrine are met, and the trial judge correctly denied defendant's motion to suppress the cable from evidence.

*By the Court.*—Judgment affirmed.