STATE of Wisconsin, Plaintiff-Respondent,

v.

James A. ALTENBURG, Defendant-Appellant.

Court of Appeals

*No. 88–1985–CR. Submitted on briefs April 3, 1989.—Decided May 4, 1989.*

(Also reported in 442 N.W.2d 526.)

For the defendant-appellant the cause was submitted on the briefs of *Ruth S. Downs*, assistant state public defender.

For the plaintiff-respondent the cause was submitted on the brief of *Donald J. Hanaway*, attorney general, and *Sally L. Wellman*, assistant attorney general.

Before Gartzke, P.J., Eich and Sundby, JJ.

EICH, J.   James Altenburg appeals from a judgment convicting him of possession of marijuana with intent to deliver in violation of sec. 161.41(1)(b), Stats. The sole issue is whether the trial court erred in failing to suppress evidence seized by police without a warrant after an officer, who had been invited into one room in the house, went to another room to which he had not been invited, but where the evidence was lying in the open, in plain sight of anyone entering the room. We conclude that it was error to deny the motion, and we therefore reverse.

The facts are not in serious dispute. Altenburg lived in a second-floor apartment accessible by an outside stairway. He shared the apartment with one Jim Miller. On the night in question, Wood County Sheriff's Department Investigator Mark Gosh and a federal investigator came to the door, asking about Miller. The officers entered the apartment kitchen without any objection by Altenburg and continued to ask him about Miller's whereabouts and activities. After a time, Gosh was preparing to leave and gave Altenburg his business

card, asking him to call if he should hear from Miller. Then, Gosh asked Altenburg to go into the living room and turn down the volume on the television set. Altenburg did so and, while there, turned and noticed Gosh, who had followed him, standing in or near the arched entryway to the room looking at some "bong" pipes which were in plain view in the room. The pipes could not be seen from the kitchen, where Gosh had been standing when Altenburg left the room. After inspecting the pipes, Gosh applied for and obtained a search warrant. A subsequent search of the apartment turned up four baggies of marijuana, which formed the basis for the charges against Altenburg.

Altenburg moved to suppress the evidence on grounds that Gosh was not lawfully in the living room when he observed the pipes and thus their discovery and seizure, and the later discovery and seizure of the marijuana, were accomplished in violation of his constitutional rights.

Gosh testified at the motion hearing. He stated that when Altenburg answered the door, he (Gosh) told him he wanted to talk to him about Miller. According to Gosh, Altenburg was "very cooperative" and allowed the two officers to enter the kitchen. He testified that after they had talked for a while he gave Altenburg his business card and was preparing to leave, but then decided he wanted to ask some more questions and to go somewhere and sit down. He did not communicate any of this to Altenburg, but instead asked him to go into the living room and adjust the volume on the television set. Gosh acknowledged that he followed Altenburg to the living room without his knowledge. He denied actually entering the room, however, stating that he simply walked to the entryway and "kind of st[uck his] head into [the room]" and saw the pipes.

Gosh also testified that he could not recall whether he had any reason for following Altenburg other than that he was looking for a place to sit down, and was "interested" in seeing where Altenburg was going and whether anyone else was in the apartment. According to Gosh, he followed Altenburg simply because he was "a police officer . . . watching what's going on."

The trial court ruled that Gosh had the right to follow Altenburg to the living room for "his own safety," and that because once he entered the room the evidence was in plain view, it was admissible.

█

One of the exceptions to the search warrant requirements of the state and federal constitutions is that evidence in an officer's "plain view" may be seized without first obtaining a warrant. In order for the exception to apply, however, the following factors must be found to exist: (1) the officer must have a prior justification for being in the position from which the discovery was made; (2) the evidence must be in plain view; (3) the discovery itself must be inadvertent; and (4) the item seized, either by itself or with facts known to the officer at the time, must provide probable cause to believe there is a connection between the evidence and some criminal activity. *Bies v. State,* 76 Wis. 2d 457, 463-64, 251 N.W.2d 461, 464-65 (1977), citing *Coolidge v. New Hampshire,* 403 U.S. 443, 464-73 (1971).

█

In reviewing the trial court's application of these criteria, we will not upset findings of historical fact unless they are clearly erroneous. *State v. Lee,* 122 Wis. 2d 266, 274, 362 N.W.2d 149, 152 (1985). However, we need not defer to the trial court's application of constitutional principles to the found facts. Those are questions of law which we review *de novo. Id.*

667

The primary issue is whether Gosh had a prior justification for being in a position to see the marijuana pipes in Altenburg's living room—whether he had the right to be where he was at the time he first observed them.

In *State v. Monahan,* 76 Wis. 2d 387, 251 N.W.2d 421 (1977), two undercover officers posing as drug buyers went to a house owned by a man named Hills and were invited in. Hills directed the officers to the den and told them not to go into the living room. Apparently the den adjoined a kitchen, which in turn adjoined the living room. At some point in the men's conversation, Hills left the den, passed through the kitchen and entered the living room, where the defendant Monahan was seated on a sofa. One of the officers followed Hills into the kitchen, to a point where he could see into the living room. The officer observed Hills—who was unaware that he had been followed—remove a bag from under the sofa near where Monahan was sitting. Hills brought the bag back to the den and removed quantities of marijuana from it, which he sold to the officers. Monahan was arrested, charged and convicted as a result of the sale. Monahan moved to suppress the marijuana as evidence on grounds that the officer had no right to enter the kitchen—the place from which he saw Hills remove the marijuana from Monahan's presence.

The trial court denied the motion. The supreme court reversed, reasoning as follows. First, the court stated that the right of the officer to be in the kitchen must be determined by examining the conduct of the parties from a "common sense" standpoint:

> When one invites another into one's home the invitation may implicitly extend to all areas of the home or it may be limited to a specific area. The extent of the invitation usually depends upon the relationship of the parties and the particular circumstances of the

visit. The door-to-door salesperson invited into the home knows he or she is limited to the room [he or she is] brought into. One's family or close friends may understand that they may move freely from room to room. *Monahan,* 76 Wis. 2d at 394, 251 N.W.2d at 423.

The court then considered the officer's movement into the kitchen in light of Hills's conduct:

> There was no statement that the agents were not to enter the kitchen. Did this mean they were entitled to enter the kitchen without invitation from Hills or in his absence? We do not believe so. The conduct of Hills demonstrates that the agents were to remain in the den. He specifically directed them to this room. He gave no indication that [they] were entitled to roam at will, on the contrary he stated they were not to go into the living room. *Monahan,* 76 Wis. 2d at 394, 251 N.W.2d at 423.

Finally, the court looked to conduct of the officers. Noting that the one who followed Hills out of the den "waited until Hills was in the living room before entering the kitchen," knowing that "he was not to be in the kitchen to make observation into the living room," *Monahan,* 76 Wis. 2d at 394–95, 251 N.W.2d at 423, the court concluded that that conduct constituted a search and held that the seized evidence should have been suppressed:

> When the agent followed Hills into the kitchen he was on an "exploratory investigation" examining Hills' premises with a view to the discovery of contraband or evidence of guilt. In looking into the living room the agent was prying into hidden places for that which is concealed. We conclude that the entry into the kitchen and the visual surveillance of the living room was a search. *Id.* at 395, 251 N.W.2d at 423.

The state argues that *Monahan* is distinguishable because: (1) unlike Hills, Altenburg never specifically told Gosh not to enter the living room, and thus Gosh had "no reason to believe [he] was not welcome to follow Altenburg [then]"; and (2) unlike the situation in *Monahan,* Gosh and the federal agent "were not examining the premises with an eye to the discovery of contraband or evidence of guilt." We are not persuaded.

First, all the officer in *Monahan* was told was not to enter the living room, and he did not do so. He simply waited until Hills left the den and followed him through the kitchen to a point where he could see into the living room. He never was told that the kitchen, as opposed to the living room, was off limits. And although Altenburg never specifically asked Gosh and the federal agent not to enter any other room in the apartment, he had only invited them into the kitchen and his testimony was uncontradicted that, during their conversations, he positioned himself as far into the kitchen as he could in order to make sure the two men remained where they were.

Second, as to the state's contention that *Monahan* is distinguishable because Gosh and the federal agent were not at Altenburg's apartment with any expectation of finding evidence of drugs, we can only note that there is no suggestion in the record that they went to Altenburg's apartment for any reason other than to inquire about criminal activity. They were not in Altenburg's apartment as "family or close friends" entitled to roam the quarters at will. *Monahan,* 76 Wis. 2d at 394, 251 N.W.2d at 423. They were there on police business.

As we have noted, *Monahan* tells us that whether an invitation into a person's home extends to all corners of the residence or is limited to a specific area "depends

upon the relationship of the parties and the particular circumstances of the visit." *Id.,* 76 Wis. 2d at 394, 251 N.W.2d at 423. And if traveling salespersons, in pursuit of otherwise innocent activities, should know that their invitation to enter a private home "is limited to the room they are brought into," *id.,* certainly police officers pursuing an investigation into possible criminal activity should be held to a similar presumption.

Altenburg left the kitchen and went into the living room in response to Gosh's specific request that he do so. As in *Monahan,* Gosh did not accompany him to the living room, but waited until he had left and followed him there. Whether Gosh followed him only to the entry to the room, as he said, or several feet inside, as Altenburg testified, his presence in either area was not only uninvited, but unknown to Altenburg. We see no difference between those actions and the actions of the officer in *Monahan,* which the court characterized as an "exploratory investigation" with a view toward discovering evidence of guilt. *Id.,* 76 Wis. 2d at 395, 251 N.W.2d at 423.

It may be, as he said, that Gosh followed Altenburg because he had just decided that he wanted to sit down, or simply because, as a police officer, he wanted to know "what's going on." But we agree with the *Monahan* court's observation that even the door-to-door salesperson would know that his or her invitation into the home would not include such freedoms. Gosh "maneuver[ed]" himself to achieve the "plain view" of the paraphernalia, and this he may not do. *State v. Pires,* 55 Wis. 2d 597, 608, 201 N.W.2d 153, 159 (1972).

Finally, we note that one of the primary reasons for the trial court's holding was its belief that Gosh had the right to look into the living room for his own safety and protection. But Gosh himself never gave this as a reason for following Altenburg through the kitchen. Indeed, he stated that he really did not know whether he "had an exact reason" for doing so. As much as he could say was that he was looking for a place to sit down, that he was interested to see whether anyone else was in the apartment, and that, as a police officer, he was simply "watching what's going on." On this record, we cannot conclude that unexpressed "safety" concerns would justify Gosh in surreptitiously following Altenburg to the living room.

Because Gosh had no right to be in the position he had assumed when he observed the pipes, the "plain view" rule would not exempt that evidence from the warrant requirements of the state and federal constitutions. We conclude, therefore, that the trial court erred when it denied Altenburg's suppression motion. We reverse the conviction and remand with directions to the trial court to vacate both the judgment of conviction and the plea on which it was entered.*

*By the Court.*—Judgment reversed and cause remanded for further proceedings consistent with this opinion.

---

* After the denial of Altenburg's motion to suppress, he entered plea of no contest to the charge and appealed the denial, as he is entitled to do under sec. 971.31(10), Stats.