STATE of Wisconsin, Plaintiff-Respondent,

v.

Donnell JOHNSON, Defendant-Appellant.

Court of Appeals

*No. 92–0225–CR. Submitted on briefs August 11, 1992.—Decided May 18, 1993.*

(Also reported in 501 N.W.2d 876.)

For the defendant-appellant the cause was submitted on the briefs of *William J. Tyroler*, assistant state public defender, of Milwaukee.

For the plaintiff-respondent the cause was submitted on the briefs of *James E. Doyle*, attorney general, and *William C. Wolford*, assistant attorney general.

Before Wedemeyer, P.J., Sullivan and Schudson, JJ.

SCHUDSON, J.   Donnell Johnson pled guilty to possession of a controlled substance (cocaine) with intent to deliver, while armed, party to a crime. On August 26, 1991, he was sentenced to three years in prison and a $1000 fine. Johnson appeals, challenging the trial court's denial of his motion to suppress evidence. Because the police entry to Johnson's apartment was unconstitutional, we reverse.

## I.  FACTUAL BACKGROUND

The facts central to our decision are not in dispute. According to the testimony at the suppression hearing, on December 19, 1989, Milwaukee Police Officers Timothy Klug and Robert Paluso were on duty inside the apartment building at 3004 W. Wells Street in the City of Milwaukee. They had been assigned to a "Directed Patrol Mission" "to field interview anyone in the apartment building or the surrounding areas" because of the extremely high drug dealing in the building. The building owners and manager had given the police permission to patrol the building.

At about 9:10 or 9:15 p.m., Officers Klug and Paluso stopped Johnson inside the hallway as he entered the building. Klug explained that Johnson exhibited no suspicious behavior but that he and Paluso stopped him because he "just happened to come in the building." They frisked Johnson, finding no weapons or drugs, and questioned him in the hallway for five to ten minutes about his identity and reason for being in the building.

Johnson cooperated with the officers, doing and saying nothing that aroused further suspicion during the five to ten minutes in the hallway. He told them his name and explained that he was visiting his girlfriend. He did not have identification with him, but said it was inside his girlfriend's apartment. The police did not place Johnson under arrest, but explained that during this period of questioning, they "probably" would not have allowed him to leave.

Still wanting verification of Johnson's identity and reason for being in the building, they accompanied Johnson to the second floor apartment where he said his girlfriend lived. Officer Klug knocked on the door but no one answered. Johnson then held up the key and

Klug "grabbed" the key. When Johnson then said, "let me do it," Klug returned the key to him and Johnson opened the door. At this point, Johnson still had said and done nothing to arouse suspicion and, Klug acknowledged, his continuing investigation of Johnson related only to the general information the officers had regarding the drug dealers in the building, together with the police effort "to field interview anyone in the apartment building."

Klug said that Johnson entered the apartment indicating that he was going to check for some identification. Klug did not ask for Johnson's permission to enter, and Johnson did not ask him to come in. Klug entered anyway, without a warrant, "[r]ight on the threshold . . . [a]pproximately four to six inches maybe," "so that he couldn't slam the door shut on me."

Johnson then entered the bedroom and remained partially within Klug's view from the threshold. Klug testified: "[Johnson] was fumbling with something and keeping an eye on me. Now, I am suspicious." Officer Klug further testified that he became "afraid" "[b]ecause I felt he was reaching for a gun. I honestly did. Just the look in his eye, just the look he had, I had an immediate fear." Klug then entered the bedroom and recovered a gun that was in plain view in the closet where Johnson had been reaching, ten bindles of cocaine from underneath the gun, and approximately $260 cash from next to the gun.

On appeal, Johnson argues, first, that the threshold entry was improper and, second, that even if that entry was lawful, the bedroom entry was not.[1] Agree-

---

[1] At the trial court, the State first challenged but later conceded Johnson's standing. Also at the trial court, Johnson challenged the initial stop but, in his brief to this court, he abandoned that issue on appeal.

ing with his first contention, we only address the threshold entry.

## II. TRIAL COURT DECISION

The trial court denied Johnson's motion to suppress evidence, emphasizing that this drug-infested location was "one of the worst areas and worst buildings in the city" encountered by the police and, further, "that over fifty percent of the people . . . had no legitimate reason to be there, . . . gave false names . . . to evade and avoid the police and frustrate their activities and actions." "This isn't an apartment building in Brookfield[,]" the court explained and, therefore, as "the target of the Direct Patrol Mission," its occupants were subject to stops, frisks, and searches absent any specific, individualized, police suspicion:

> [T]hey had a right to pat him down and ask him his name. They have a right under these circumstances to do that to *anybody they found in that hallway* . . . .
> . . . Officer Klug followed the defendant up, . . . [Johnson] is now in his domicile and his home, but the officer doesn't know that, and what occurs is the officer stands in the doorway now waiting for the verification of the identification, and *the reason the officer stands in the doorway is for those reasons he stated, gave rise to his presence in the building in the first place* and that is people have been deceitful, they have given wrong names, they've been found to be drug dealers, found to be people who committed criminal damage to property.

(Emphasis added.) Accordingly, the trial court found that under all the circumstances, and particularly because of the purpose of the "Direct Patrol Mission" in this "den of iniquity," the police actions were reasonable.

229

Specifically regarding the threshold entry, the trial court added:

> I find that from Officer Klug's testimony, that the defendant said, in effect, let me do it, and he opens up the door and when Officer Klug says we are there for purposes of getting the identification that there wasn't — because there wasn't any resistance by the defendant to that finding of the Court. So you understand, it was not unreasonable given the officer's prior experience to standing in the threshold to prevent the door from being closed. I would find that if it is an entry, I don't anticipate, that I wouldn't think that that was an entry under those circumstances, but if it was an entry, I think it was clearly with consent of the defendant, and if it wasn't with consent of the defendant, it was clearly as the Court I think just indicated for the purposes of guarding against what Officer Klug indicated he said he was guarding against, I didn't want the defendant to slam the door in front of me because they've done that to me before in that very building. He didn't say in that very building but they've done it to him before in that building. So regardless of how it's characterized, I think under any of the characterizations that the officer was reasonable in the actions he took.

## III. STANDARD OF REVIEW

The trial court made factual findings based, in part, on its conclusion that "the credibility factor . . . weighs in favor of Officer Klug and the State's witnesses . . . ." For purposes of our review, we accept those factual findings, except to the extent they are against the great weight and clear preponderance of the evidence. *See State v. Jackson*, 147 Wis. 2d 824, 829, 434

N.W.2d 386, 388 (1989). We independently determine, however, whether those facts satisfy the constitutional requirement of reasonableness. *Id.*

## IV.   THE THRESHOLD ENTRY

The trial court concluded it "wouldn't think that that was an entry under those circumstances," when Officer Klug stepped into the doorway so that Johnson could not close the door. That conclusion was erroneous because, as a matter of law, Klug's step clearly constituted "entry." Further, at that point, prior to observing Johnson's actions in the bedroom, no "circumstances" justified the warrantless entry.

■

Generally, evidence seized in a warrantless search of one's home is inadmissible absent a well-delineated, judicially-recognized exception. *See State v. Douglas*, 123 Wis. 2d 13, 17–22, 365 N.W.2d 580, 582–584 (1985). Indeed, "the Fourth Amendment has drawn a firm line at the entrance to the house." *Payton v. New York*, 445 U.S. 573, 590 (1980); *see also United States v. United States District Court*, 407 U.S. 297, 313 (1972) (physical entry of a residence "is the chief evil against which . . . the Fourth Amendment is directed"). Moreover, as our supreme court has emphasized:

> The courts, including this one, have scrutinized with the greatest care claims by the state to the use of evidence seized in warrantless searches of one's home. In *Boyd v. United States*, 116 U.S. 616, 635, 6 S.Ct. 524, 534, 29 L.Ed. 746 (1886), the United States Supreme Court gave the following admonition:
>
> > "It may be that it is the obnoxious thing in its mildest and least repulsive form; but

> illegitimate and unconstitutional practices
> get their first footing in that way, namely,
> by silent approaches and slight deviations
> from legal modes of procedure. . . ."

*Douglas*, 123 Wis. 2d at 21, 365 N.W.2d at 584.[2]

Without question, Officer Klug's step into the threshold, preventing Johnson from closing the door, was an entry. As Klug explained, even though his position in the doorway was from just the "toenails" to the "balls of [the] feet," it was an incursion that "would not have allowed [Johnson] to close that door." Even extending only from the tips of his toes to the balls of his feet, it fixed the "first footing" against which the United States and Wisconsin Supreme Courts warned.

## V.  CONSENT

The State argues that denial of the suppression motion was proper because Johnson consented to the

---

[2] Ignoring these authorities, the dissent states that "[m]inor intrusions of privacy have never been regarded as fatal." Dissent at 239. Setting aside, for the moment, the question of whether a warrantless, non-consensual entry of one's home can ever be deemed a "minor intrusion of privacy," we note, of course, that these authorities are among many that resoundingly declare that, indeed, even the "mildest" violation — yes, even the "first footing" that crosses the "firm line at the entrance" — has consistently been regarded as fatal.

Accordingly, while we share the dissent's respect for the process of "split-second decisions police officers must make," dissent at 236, and while we also share the dissent's concern for "the milieu of danger," that threatens the safety of police in that process, *id*. at 240, we must not acquiesce in those split-second decisions that violate the Constitution.

warrantless search. Consent is one of the recognized exceptions to the Fourth Amendment warrant requirement. *Id.* at 18, 365 N.W.2d at 582. When asserting the consent exception, the State bears "the burden of proving by clear and positive evidence the search was the result of a free, intelligent, unequivocal and specific consent without any duress or coercion, actual or implied." *Gautreaux v. State*, 52 Wis. 2d 489, 492, 190 N.W.2d 542, 543 (1971). "[T]he proper test for voluntariness of consent under the fourth amendment is whether under the totality of the circumstances it was coerced." *State v. Rodgers*, 119 Wis. 2d 102, 114, 349 N.W.2d 453, 459 (1984). Like the entry itself, however, the constitutional significance of the undisputed facts regarding the issue of consent must receive independent, appellate review. *State v. Stevens*, 123 Wis. 2d 303, 313–14, 367 N.W.2d 788, 794 (1985), *cert. denied*, 474 U.S. 852 (1985).

Here, the trial court reached somewhat ambiguous conclusions that the police had not made an entry but "if it was an entry, I think it was clearly with consent of the defendant, and if it wasn't with consent of the defendant it was clearly . . . for the purposes of guarding against . . . [Johnson] slam[ing] the door . . . ." Even construing that conclusion as one of consent, we conclude that no evidence at the suppression hearing supports such a finding.

Johnson testified at the suppression hearing that he had not given Officer Klug or any other officer permission to come into the apartment. Officer Klug also testified that Johnson had not asked him to enter the apartment, and that he [Klug] had not asked Johnson for permission to enter the apartment. Nothing in the

record provides any basis upon which consent reasonably could have been inferred.

The State contends that "[t]here was no credible testimony that defendant objected to Klug's presence in the doorway." A person need not protest, however, to gain the Fourth Amendment's protection. Consent "cannot be found by a showing of mere acquiescence . . . ." *See United States v. Shaibu*, 920 F.2d 1423, 1426–1427, *amended*, 912 F.2d 1193 (9th Cir. 1990).

The State further argues that, even absent consent, the entry still was justified. In support of that argument, however, the State cites authorities that are clearly distinguishable. In *Washington v. Chrisman*, 455 U.S. 1 (1982), the police accompanied a suspect back to his dormitory room for identification, staying in the open doorway leaning against the doorjamb. In that case, however, the suspect already was under arrest. *Id.*, 455 U.S. at 6. In *State v. Amrine*, 157 Wis. 2d 778, 460 N.W.2d 826 (Ct. App. 1990), a detective followed a suspect from his living room to the entrance of his bedroom from which position he observed a mask and gloves linking the suspect to a robbery. *Id.*, 157 Wis. 2d at 782, 460 N.W.2d at 827. In that case, however, the defendant conceded that another resident had given the detective permission to enter the residence. *Id.* Here, in sharp contrast, Johnson was not under arrest, and no one had permitted police to enter the apartment. Thus, the authorities cited by the State fail to justify the warrantless entry into Johnson's apartment.

## VI.   CONCLUSION

From their first encounter with Johnson, to Officer Klug's step into the threshold of his apartment, police had no reason to specifically and individually suspect Johnson of anything. Only after crossing the threshold and observing Johnson's behavior in the bedroom did Klug say, for the first time, "Now, I am suspicious." Until that moment, nothing distinguished Johnson from any law-abiding resident of the building. We know of no authority that suggests that, under circumstances like these, a person's mere presence, even in a high crime area or drug-infested building, forms the basis for a warrantless entry.

As the trial court emphasized, this wasn't a "building in Brookfield." The Fourth Amendment, however, holds constitutional strength, whether in a peaceful suburban home or a troubled urban apartment. The warrantless, nonconsensual entry violated Johnson's Fourth Amendment rights. Accordingly, the evidence subsequently discovered should have been suppressed.

*By the Court.*—Judgment reversed and cause remanded.

WEDEMEYER, P.J. (*dissenting*). The court today holds that the Fourth Amendment prohibits a police officer from extending "the tips of his toes to the balls of feet" across the threshold of an apartment doorway absent a warrant. This conclusion rests on the majority's assertion that Officer Timothy Klug's position in the threshold of the doorway was an incursion that would not have allowed Donnell Johnson to close the door, and further, was without the appropriate consent. Although I agree with the majority's conclusion that Johnson did not consent to the entry of Officer

Klug into the apartment, nonetheless, I believe that under the totality of the circumstances, Klug's entry and subsequent actions were reasonable under the Fourth Amendment, and I respectfully dissent.

As noted correctly by the majority, an appellate court will not upset findings of historical fact unless they are clearly erroneous, but will review the trial court's application of constitutional principles to the found facts *de novo. State v. Altenburg*, 150 Wis. 2d 663, 667, 442 N.W.2d 526, 528 (Ct. App. 1989).

The facts below warrant brief review because they highlight the difficult, split-second decisions police officers must make while investigating possible crime. At the suppression hearing, the trial court found that Officer Klug's testimony was so inherently credible that "where the testimony coincides, the Court may accept it, but where it differs, it has to opt for that of Officer Klug." Thus, as Johnson concedes, Klug's testimony establishes the historical facts.

On December 19, 1989, Officers Klug and Robert Paluso were working a Directed Patrol Mission at the West Wells Street apartment building in question. The owners and the manager of the building had given permission for the police to be in the building in an effort to keep drug dealers and purchasers from transacting business within the building. Officer Klug testified that unauthorized individuals would gain entry into the building, kick in the doors of vacant apartments, change the locks, and utilize the apartments as drug-dealing centers. Klug further testified that this particular building was one of the worst drug-dealing buildings in the worst drug-dealing area of the city. In short, of the worst, it was the best.

Officer Klug's job during the Directed Patrol Mission was to field interview anyone in the apartment

building or surrounding area so as to ascertain the nature of their business. Klug had been working on this particular patrol for about two weeks before the incident in question. The majority of people that he had interviewed did not belong in the building. Approximately 50% of the people questioned had given false identities. Klug testified that a favorite excuse for being in the building was that the individual was there to visit a girlfriend. In 75% of the cases, however, this justification turned out to be false.

On the night in question, Officers Klug and Paluso stopped Johnson in the hallway of the building to inquire as to whether he "belonged there." The officers asked Johnson for his name and birth date. Johnson gave them his name and date of birth and stated that he was in the building to visit his girlfriend in apartment 208. Johnson, however, possessed no form of identification. The officers ran a wanted check on Johnson which was delayed several minutes due to the fact that Johnson is a common name. After waiting several minutes, Klug suggested that they proceed to apartment 208 in an effort to verify Johnson's story. Johnson agreed. Upon arriving at the apartment, Klug knocked on the door but there was no answer. Johnson indicated that she must not be home but that he had a key. Klug took the key in an effort to ascertain whether it would work in the door. Johnson, however, stated that he wanted to open the door, whereupon Klug returned the key.

Upon retrieving the key, Johnson proceeded to unlock the door. Johnson then indicated that he would go look for some identification. He proceeded directly into the bedroom of the apartment. Officer Klug remained at the threshold of the door with his feet positioned in such a way as to preclude the door from

being thrown shut. Johnson contends, and the majority agrees, that this intrusion into the apartment was a violation of the warrant requirement of the Fourth Amendment, and therefore, any evidence seized must be excluded from consideration. I disagree.

The Fourth Amendment[1] provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

In *Cady v. Dombrowski*, 413 U.S. 433, 439 (1973), the United States Supreme Court stated that "[t]he ultimate standard set forth in the Fourth Amendment is reasonableness." Further, in *Elkins v. United States,* 364 U.S. 206, 222 (1960), the Supreme Court noted that "it can fairly be said that in applying the Fourth Amendment this Court has seldom shown itself unaware of the practical demands of effective criminal investigation and law enforcement." And in *Pennsylvania v. Mimms,* 434 U.S. 106, 108–09 (1977)

---

[1] As an initial matter, we note that the Wisconsin Supreme Court has stated that the search and seizure provisions of the United States Constitution and Wisconsin Constitution are identical. *Conrad v. State,* 63 Wis. 2d 616, 622, 218 N.W.2d 252, 255 (1974). The supreme court has "consistently and routinely conformed the law of search and seizure under the state constitution to that developed by the United States Supreme Court under the fourth amendment." *State v. Fry,* 131 Wis. 2d 153, 172, 388 N.W.2d 565, 573 (1986), *cert. denied,* 479 U.S. 989 (1987).

(citation omitted), the Court, in evaluating the validity of an officer's investigative or protective conduct under the Fourth Amendment noted, the "touchstone of our analysis . . . is always the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." *See also Bies v. State,* 76 Wis. 2d 457, 468, 251 N.W.2d 461, 466 (1977). Finally, the standards of reasonableness under the Fourth Amendment are not susceptible of Procrustean application. *Ker v. California,* 374 U.S. 23, 33 (1963). Thus, in the world of search and seizures, what is constitutionally correct is ultimately decided by what reasonable expectations of privacy exist and whether the police officer's conduct *vis-a-vis* the particular expectation was reasonable. Minor intrusions of privacy have never been regarded as fatal.

It cannot be gainsaid that Officer Klug was engaged in an authorized investigation seeking verification of Johnson's identity. He lawfully accompanied Johnson to apartment 208. Johnson opened the door and it remained open. In the context of Klug's knowledge of the premises and his training and experience, plus his mission, Klug positioned himself so that he could successfully complete, without interference, his investigation. He was doing nothing more, nothing less. He was neither invited into the apartment nor was he told to remain in the hallway. The reasonableness of his reaction as an officer versus a layman, is to be tested by the circumstances in which he found himself, keeping in mind his duty as an officer.[2]

---

[2] As noted in the Law Enforcement Code of Ethics, a law enforcement officer's "fundamental duty is to serve mankind; to safeguard lives and property; to protect the innocent against deception, the weak against oppression or intimidation, and the

I conclude that Klug's position, if however slightly intrusive, is incidental given that the door was open wide enough for him to continually observe Johnson. The acts and gestures of Johnson were of such a nature that even if Klug was outside the apartment standing in the hallway, his professional response in the context of his duties was objectively reasonable in the circumstances in which he found himself.

We cannot divine what techniques are apposite in a criminal investigation, nor ought a reviewing court engage in such an exercise. Our task, given the nature of the appeal, is to determine whether the police officer's conduct was reasonable in the milieu of danger in which he was discharging his professional responsibility. A criminal investigation reasonably, is not a series of slides, any one of which can be isolated and then examined with the precision of an academic scalpel. Rather, it is an interdependent continuum of action and reaction requiring split-second decisions that ought be examined only under the microscope of reasonableness.

Because the majority concludes that Officer Klug's entry into the apartment was illegal, it does not reach the question of whether Klug's subsequent actions in entering the apartment and discovering the evidence at issue was constitutionally flawed. Without belaboring the point, I would hold that the trial court acted appropriately in finding that Klug's subsequent movement into the bedroom was reasonable. Officer Klug testified that while he was watching Johnson search for some identification, Johnson began fumbling for something while looking directly at Klug. Klug explained that he could not see Johnson's right side

peaceful against violence or disorder; and to respect the constitutional rights of all men to liberty, equality, and justice."

while this fumbling was occurring. Klug stated that he became fearful because of the look in Johnson's eye and because he believed that Johnson was reaching for a gun. Based on these facts, Klug made the split-second decision to enter the room to ascertain what Johnson was doing. The trial court concluded the following regarding Klug's movement into the bedroom:

> I can't find that it's unreasonable at all. I think that in this context, not to allow this to be deemed reasonable is to in effect disarm the community and disarm its police officers when certain segments of the community actually asked the police officer to do what he actually did here.

I would hold that the trial court's above statement adequately considered the appropriate considerations and was a sound result.

Finally, I would also conclude that the gun, the cocaine, and the money were properly admitted into evidence under the "plain view" exception to the warrant requirement for searches. *State v. Amrine*, 157 Wis. 2d 778, 784, 460 N.W.2d 826, 828 (Ct. App. 1990). There is no dispute that when Klug entered the bedroom area the evidence was plainly visible. The gun, a .25 caliber semi-automatic handgun, was lying on the shelf where Johnson had previously been reaching. Under the gun were ten packets of pharmaceutically folded bindles containing white powder that Klug suspected to be cocaine. Lying next to the weapon and cocaine was $260 in cash.

In conclusion, in light of the reasonably perceived danger in which Officer Klug found himself, his minimal intrusion into the apartment of Johnson was both reasonable and appropriate. Although I agree with the majority that the entry was not appropriately based

upon Johnson's consent, nonetheless, the trial court was correct in its result. *See State v. Holt,* 128 Wis. 2d 110, 124, 382 N.W.2d 679, 687 (Ct. App. 1985) (where trial court reaches the proper result, but for the wrong reason, the decision will be affirmed). Further, Klug's subsequent actions in entering the apartment and discovering illegal contraband were not constitutionally flawed. Thus, I would affirm.