STATE of Wisconsin, Plaintiff-Appellant,

v.

Leonard MURDOCK, Defendant-Respondent-Petitioner.

Supreme Court

*No. 88-0918-CR. Argued March 7, 1990.—Decided May 24, 1990.*

(Also reported in 455 N.W.2d 618.)

218

For the defendant-respondent-petitioner there were briefs by *David M. Sweet,* Milwaukee and oral argument by *David M. Sweet.*

For the plaintiff-appellant the cause was argued by *Barry M. Levenson,* assistant attorney general with whom on the brief was *Donald J. Hanaway,* attorney general.

STEINMETZ, J. The defendant, Leonard Murdock, seeks review of a published decision of the court of appeals, *State v. Murdock,* 151 Wis. 2d 198, 445 N.W.2d 319 (Ct. App. 1989), reversing an order of the circuit court for Milwaukee county, Honorable Robert W. Landry. The circuit court order granted the defendant's motion to suppress evidence seized when a detective searched through closed drawers in an open pantry area after the defendant had been arrested in his home pursuant to a valid arrest warrant.

The first issue for review is whether the court of appeals erred in concluding that the warrantless search of the defendant's home conducted incident to a lawful arrest violated the Fourth Amendment to the United States Constitution and Article I, sec. 11 of the Wisconsin Constitution. The second issue asks whether the court of appeals erred in announcing a two-prong test as a "bright-line rule" to be used in determining the validity of a warrantless search of a home incident to a lawful arrest.

We affirm the decision of the court of appeals which validated the scope of the search incident to a lawful arrest in this case. However, we disagree that the two-prong "bright-line" rule set down by the court of appeals conforms with law set by the United States Supreme

Court in *Chimel v. California,* 395 U.S. 752, 762–63 (1969) and its progeny. Therefore, we reject that test and hold that law enforcement officials may conduct a limited search incident to arrest in the home. That search is reasonable per se if confined to the immediate area surrounding the arrestee at the time of his arrest.

The facts are undisputed. Four detectives from the Milwaukee county sheriff's department went to the defendant's residence, a rooming house, to execute three arrest warrants. The detectives also had information that the defendant might be in possession of a firearm. However, the detectives did not possess a search warrant.

The detectives learned from the landlord that the defendant was renting two rooms in the building, Nos. 2 and 15. The officers went to room 15, knocked on the door, announced their presence and demanded entry. Testimony elicited from the detectives stated that they were made to wait 10 to 15 minutes outside room 15. During this time one detective testified that he heard feet moving and a sound like clicking metal from inside the room. Eventually, a man whose identity was then unknown to the detectives opened the door.

The detectives entered the defendant's home with their weapons drawn. The defendant and two other men present in the room were ordered to "hit the floor." All three men complied immediately without struggle or resistance, and the defendant was arrested.

The defendant and the other two men were handcuffed with their hands behind their backs. All three men remained so restrained while lying on the floor face down. None of the men made any movement or motions construed by the detectives as attempts to resist, escape or gain access to the pantry area. While restrained, the

defendant's head was approximately three to four feet from the entrance to the pantry.

Contemporaneous with the handcuffing of the three men, a search of the room was executed.[1] The room itself was small, approximately 10 × 12 feet or 12 × 14 feet. Connected to the room was a pantry-type closet which was approximately 6 × 4 feet. The pantry area either had no door or the door was open at the time the search was executed.

At the time the pantry was searched, Detective Banaszak was standing over the defendant who made no attempt to gain entry to the pantry. Detective Welch joined Detective Banaszak, looked into the pantry and saw a single, unspent .22 caliber bullet sitting in plain view on a pantry shelf. The detective seized the bullet. This seizure is not contested. Detective Welch then searched through the three closed drawers of the pantry and found and seized a short-barreled rifle in the middle drawer.

Murdock was charged with the felony of possessing a short-barreled rifle in violation of sec. 941.28, Stats.[2]

---

[1] It is unclear exactly at what point the search began; however, the contemporaneity of the search to the time of arrest is not contested.

[2] Section 941.28, Stats., provides, in relevant part, as follows:

**941.28 Possession of short-barreled shotgun or short-barreled rifle. (1)** In this section:

(a) 'Rifle' means a firearm designed or redesigned, made or remade, and intended to be fired from the shoulder or hip and designed or redesigned and made or remade to use the energy of a propellant in a metallic cartridge to fire through a rifled barrel a single projectile for each pull of the trigger.

(b) 'Short-barreled rifle' means a rifle having one or more barrels having a length of less than 16 inches measured from closed breech or bolt face to muzzle or a rifle having an overall length of less than 26 inches.

. . ..

Murdock did not challenge the lawfulness of his arrest on the three arrest warrants. However, Murdock filed a motion to suppress the rifle as the fruit of an unlawful search.

A hearing was held on the defendant's motion. At the hearing, the detectives testified that they were on the premises for the sole purpose of arresting the defendant pursuant to the arrest warrants. The detectives claimed authority to search the room based on realistic, practical and legitimate concerns for their personal safety.

The trial court granted the defendant's motion to suppress distinguishing between the ability of police to search a car versus a home incident to a lawful arrest. The trial court rejected the safety concern as rationale for the search under these facts. Voicing general concern for the safety of police officers, the trial court stated that, under the facts of this case, "it concerns me that the principle be proposed here that the officers had the right to make this search on the pretense of their own safety." The trial court noted the control the officers had over the situation and the strength and speed needed by the defendant to reach the pantry drawers. The trial court also noted that the detectives only had the authority to arrest the defendant and that the search conducted could have resulted in contraband having "nothing to do with self-defense." The court further stated that if a search of a home is authorized upon arrest on a lawful warrant, the search in this case went beyond "a personal search in the immediate environs" of the arrestee and was therefore violative of the constitution.

---

**(2)** No person may sell or offer to sell, transport, purchase, possess or go armed with a short-barreled shotgun or short-barreled rifle.

**(3)** Any person violating this section is guilty of a Class E felony.

Upon the granting of the defendant's motion to suppress, the prosecution announced its inability to proceed. The defendant made oral motion to dismiss the criminal complaint which the trial court granted.

The state appealed the suppression ruling. The court of appeals reversed the trial court order and ruled that the search was valid because it was executed in an area into which the defendant might have reached at the time of the arrest. *Murdock,* 151 Wis. 2d at 207. The court of appeals decision adopted a "bright-line rule" consisting of a two-prong test which eliminates an evaluation of the reasonableness of the actions of the police under the specific circumstances of each case. In announcing this "bright-line rule," the court of appeals relied heavily on the assumption that such a rule would guide and protect police officers. The court of appeals held:

> [A] warrantless premises search incident to a lawful arrest is valid as long as it is limited to the area generally within the 'arrestee's reach at the time of his arrest,' that is, the room in which the arrest is made including a contiguous open area such as a closet or pantry, and the arresting officers have reasonable grounds to conclude that weapons or destructible evidence might be present in that room. Since the search here satisfies both prongs of this test, it must be upheld. (Footnote omitted.)

*Id.*

The defendant petitioned this court for review pursuant to sec. 808.10, Stats. We granted the petition.

In reviewing an order suppressing evidence, the trial court's findings of evidentiary or historical fact will be upheld unless they are against the great weight and clear preponderance of the evidence. *State v. Guzy,* 139 Wis.

2d 663, 671, 407 N.W.2d 548 (1987). Whether a particular place is an area from which a defendant might secure a weapon is a question of constitutional fact which an appellate court will review independently of the trial court's findings. *State v. Fry,* 131 Wis. 2d 153, 171, 388 N.W.2d 565 (1986). Whether the facts satisfy the constitutional requirement of reasonableness also presents a question of law which this court reviews independent of the lower court's decisions. *State v. Jackson,* 147 Wis. 2d 824, 829, 434 N.W.2d 386 (1989). This court exercises independent appellate review of constitutional facts because " '[t]he scope of constitutional protections, representing the basic value commitments of our society, cannot vary from trial court to trial court, or from jury to jury.' " *State v. Woods,* 117 Wis. 2d 701, 715, 345 N.W.2d 457 (1984) quoting *State v. Hoyt,* 21 Wis. 2d 284, 305-06, 128 N.W.2d 645 (1964) (Wilkie, J., concurring).

The defendant's motion to suppress the rifle was based on the Fourth and Fourteenth amendments to the United States Constitution,[3] and Art. I, sec. 11 of the Wisconsin Constitution.[4] The texts of these constitu-

---

[3]The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

The fourth amendment was made binding on the states in *Wolf v. Colorado,* 338 U.S. 25 (1949).

[4]Article I, sec. 11 of the Wisconsin Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall

---

226

tional guarantees are essentially identical. Therefore, this court "has consistently and routinely conformed the law of search and seizure under the state constitution to that developed by the United States Supreme Court under the fourth amendment." *Fry,* 131 Wis. 2d at 172. It is well-established that the fourth amendment does not prohibit all searches and seizures but only those that are unreasonable. *See, e.g., United States v. Rabinowitz,* 339 U.S. 56, 60, 65 (1950) (citing *Carroll v. United States,* 267 U.S. 132 (1925)).

The purpose of the fourth amendment is to safeguard the privacy and security of individuals against arbitrary invasions by government officials. *See Michigan v. Tyler,* 436 U.S. 499, 504 (1978). In interpreting the fourth amendment, a balance must be struck between the intrusion on the individual's fourth amendment interests and the government's promotion of its legitimate interests. *See Maryland v. Buie,* — U.S. —, 110 S. Ct. 1093, 1096 (1990); *Bies v. State,* 76 Wis. 2d 457, 466, 251 N.W.2d 461 (1977). The United States Supreme Court has consistently held that warrantless searches are per se unreasonable under the fourth amendment, subject to a few carefully delineated exceptions. *See Texas v. Brown,* 460 U.S. 730, 735–36 (1983). In the case now before this court, the state asserts that the search into the pantry drawers and subsequent seizure of the rifle found in the middle drawer were valid as falling within the search incident to arrest exception to the general search warrant requirement.

The search incident to arrest exception to the general search warrant requirement has undergone many

not be violated; and no warrant shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized.

shifts in its proposed standards of constitutionality of a search. *See* 2 W. LaFave, *Search and Seizure,* sec. 6.3(b) (2d ed. 1987). Since 1969, the United States Supreme Court rule controlling searches conducted incident to arrest in the home has been that pronounced in *Chimel,* 395 U.S. 752.

In *Chimel,* the United States Supreme Court held that a lawful arrest creates a situation which justifies the contemporaneous search without a warrant of the person arrested and the immediately surrounding area. The Court noted that several governmental interests are promoted through and justify the search incident to arrest exception. One is the need to detect and remove any weapons that the arrestee might try to use to resist arrest or escape. Another is the need to prevent the destruction or concealment of evidence. *Id.* at 763.

The *Chimel* rule did not create the search incident to arrest doctrine, but instead limited its scope. *See e.g., Leroux v. State,* 58 Wis. 2d 671, 688, 207 N.W.2d 589 (1973). Previous cases had permitted full-scale searches of entire rooms, even an entire four-room apartment, under the guise of search incident to arrest. *Rabinowitz,* 339 U.S. 56; *Harris v. United States,* 331 U.S. 145 (1947).

Given a valid arrest, which is uncontested in this case, *Chimel* creates a rule in which certain areas of search are per se reasonable. *See Buie,* 110 S. Ct. at 1103 n.6 (Brennan, J., dissenting).

First, *Chimel* states that "it is reasonable for the arresting officer to search the person arrested" for weapons and evidence. *Chimel,* 395 U.S. at 763. *See United States v. Robinson,* 414 U.S. 218 (1973). Second, and relevant to the case now before us, the *Chimel* rule states

that it is reasonable to search an area near the arrestee, but not an area so broad as to be unrelated to the protective purposes of the search:[5]

> And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

*Chimel,* 395 U.S. at 763.

Thus, *Chimel* defines the area of "immediate control" within which the police may reasonably search incident to arrest as "the area from within which [the arrestee] might gain possession of a weapon or destructible evidence." *Id.*

Following the *Chimel* decision, the Court in *Vale v. Louisiana,* 399 U.S. 30, 33 (1970) stated that a constitutional search incident to arrest is determined at the time of the arrest. The *Vale* Court also made clear that the search must be substantially contemporaneous with and confined to the immediate area of the arrest. More

---

[5]The *Chimel* rule does not condone warrantless general searches of homes. Instead, the *Chimel* Court emphasized the importance of engaging the warrant process where practicable and stated that the scope of a warrantless search must be " ' "strictly tied to and justified by" the circumstances which rendered its initiation permissible.' " *Chimel,* 395 U.S. at 762 (quoting *Terry v. Ohio,* 392 U.S. 1, 19 (1968)).

recently, the Court affirmed the efficacy of the *Chimel* rule in *Buie,* 110 S. Ct. at 1099 (distinguishing a search incident to arrest from a protective sweep).

Both parties to this action agree that *Chimel* and its progeny announce the controlling rule. The parties also agree that the United States Supreme Court has not announced a more exacting definition of the scope of a search incident to arrest in the home.

The parties' arguments differ in terms of whether the scope of the permissible search of the immediate area incident to an arrest in the home is dependent on the level of control law enforcement officers have over the arrestee or the arrestee's ability to gain actual access to the area searched. The defendant argues that the level of control exercised by the officers in this case effectively cut off his access to the pantry area such that the officers had no realistic, practical or legitimate concern for their safety. The defendant asserts that the review of whether an area is within an arrestee's immediate control requires an ad hoc review of factors affecting actual accessibility at the time of the search. Relevant factors include whether the arrestee was restrained or handcuffed and in what fashion, the ratio of officers to arrestees present, the physical placement of arrestees in relation to the officers and the area searched, the distance between the arrestee and area searched and whether the officers had their weapons drawn.

In contrast, the state argues that the *Chimel* rule as stated controls and should not be modified by considerations as to actual accessibility to the area within the immediate vicinity searched. The state asserts that an independent review of factors determining actual accessibility to the area searched unnecessarily complicates the *Chimel* rule. The rule is concerned with probability of gaining access not actuality. According to the state,

the fact of a lawful arrest and the dangers inherent in arrest situations authorize a limited search incident to arrest in the home so long as the search is conducted contemporaneous to the arrest and is within the area of the arrestee's immediate control.

This court agrees with the state that actual accessibility, as a practical matter, cannot be the benchmark determining the authority to search and the reasonableness of the scope of a search incident to arrest. Arrests are tense and risky undertakings during which many activities necessarily happen simultaneously.

The United States Supreme Court has recognized the danger posed to officers executing custodial arrests. "When a custodial arrest is made, there is always some danger that the person may seek to use a weapon, or that evidence may be concealed or destroyed." *United States v. Chadwick,* 433 U.S. 1, 14 (1977). "Every arrest must be presumed to present a risk of danger to the arresting officer." *Washington v. Chrisman,* 455 U.S. 1, 7 (1982). Indeed, the danger to police may be heightened when the arrest is made in the arrestee's home because the police officer will rarely be familiar with the home he or she is entering. The arrestee, however, knows where items such as weapons and evidence are secreted.

Therefore, an interpretation of *Chimel* which allows both the restraint of an arrestee's movement and a limited, contemporaneous search of the immediate area surrounding the arrestee creates a practical rule which realistically advances the government's legitimate purposes justifying application of the exception.[6]

---

[6]It is not clear from the facts in *Chimel* that the arrestee was restrained in any manner. However, in response to the dissent, the *Chimel* majority negated the rationale allowing a top to bottom search of a home incident to arrest. "[S]imply because some interference with an individual's privacy and freedom of move-

By analogy, authority for our rule negating accessibility as the benchmark for authorizing a search is found in the United States Supreme Court's decision in *New York v. Belton,* 453 U.S. 454 (1981). The *Belton* Court adopted a bright-line rule defining the scope of the search of a car incident to the arrest of its occupant. We adopted the bright-line rule of *Belton* in *Fry,* 131 Wis. 2d at 174. Relevant of this case, the *Fry* court drew from *Belton* the rule that the authority to search is not eviscerated and the area to be searched is not otherwise constricted because the arrestee is unlikely at the time of the arrest to actually reach into the area. This court said in *Fry* that:

> We cannot say as a matter of fact in all cases that a defendant never could regain access to the interior of an automobile after initially leaving the vehicle. Thus, we would seriously undermine police security if we adopted as a matter of constitutional fact the rule that the interior of an automobile never is within the reach of a suspect who is outside the vehicle at the arrest scene; such a rule would prohibit all automobile searches as an incident to arrest, unless the defendant was allowed to remain in the automobile during the search, which increases the risk of danger to the officer. We cannot subscribe to such a limitation on the search incident to arrest rule.
>
> The only other alternative to the *Belton* rule would be to permit searches on a case-by-case basis when the police believe that a suspect may escape from their control and regain access to an automobile. This alternative is unworkable, however, because such momentary escapes are not predictable.

ment has lawfully taken place, further intrusions should [not] automatically be allowed . . .." *Chimel,* 395 U.S. at 766–67 n.12. This manifests the Court's recognition that the arrestee's movements will be limited in some fashion at the point of arrest.

*Id.* at 174–75.

Although *Belton* and *Fry* applied the *Chimel* principles in the context of an automobile search, the government interests furthered in *Belton* and *Fry* are the same as those furthered by the in-home search proposed by *Chimel.* In allowing the police to examine the passenger compartment of the car and its contents, the United States Supreme Court noted that the arrestee had not lost any privacy interest that had been otherwise vested in the car's contents. Rather, the Court stated that the fact of the lawful custodial arrest justified the infringement of any privacy interest the arrestee may have. *Belton,* 453 U.S. at 461; *see also, Fry,* 131 Wis. 2d at 176. By analogy, the arrestee in this case does not lose his constitutionally protected privacy interest in his home. However, this court concludes that the fact of a lawful custodial arrest in the home justifies a limited infringement of that privacy interest to include a search into closed areas within the immediate area of the arrestee.

Significantly, in both *Belton* and *Fry,* searches of the passenger compartments of the cars were upheld as reasonable even though the possibility was slight that the arrestees in each case would regain access to the interior of their vehicles. In comparison, Fry, like Murdock, was handcuffed. In contrast, Fry was removed from his car and placed in a squad car prior to the search. The likelihood of Fry getting to the passenger compartment of his car and gaining access to a weapon or evidence therein was certainly no greater than the likelihood that Murdock, only a few feet away from the pantry, would reach a weapon or evidentiary items hidden there.

The *Fry* court refused to consider the defendant's actual accessibility to the interior of the car, including

233

the locked glove compartment, based on the *Belton* Court's instruction that officers could assume that the interior of the auto remained within the arrestee's reach. *See Fry,* 131 Wis. 2d at 174. Similarly, the *Chimel* rule of in-home searches incident to arrest has been characterized as one in which officers may presume as a matter of law that arrestees may take advantage of weapons or destroy evidence within their area of immediate control. *Buie,* 110 S. Ct. at 1103 n.6 (Brennan, J. dissenting). The *Fry* court accepted the *Belton* assumption saying that momentary escapes are unpredictable. We could not find as a matter of constitutional fact in *Fry* that the defendant could never regain access to the auto. By analogy, we are now unwilling to say that a defendant who is arrested in and remains in his or her dwelling as the search is conducted could never regain access to areas in his or her immediate control at the time of arrest.

As to the issue of accessibility, then, there is no practical reason to distinguish between an arrestee whose access to a car has been effectively extinguished and an arrestee whose access to a limited area in the home within which he or she might grab a weapon or evidence is extinguished. The fact of a lawful arrest automatically authorizes the search in both instances. *See Buie,* 110 S. Ct. at 1099. A search incident to arrest is a search incident to arrest no matter where the search takes place. The interests involved, assuring that the arrestee cannot gain access to weapons or evidence within his or her immediate control, apply no matter where the arrest is made.

The defendant's reliance on accessibility as controlling the scope of a search incident to arrest in the home is further negated by the fact that such a search may be conducted regardless of the probability that a weapon or evidence will be found. In *Fry,* 131 Wis. 2d at 169, we

quoted with approval from *Robinson,* 414 U.S. at 235, which stated:

'A police officer's determination as to how and where to search the person of a suspect whom he has arrested is necessarily a quick *ad hoc* judgment which the Fourth Amendment does not require to be broken down in each instance into an analysis of each step in the search. The authority to search the person incident to a lawful custodial arrest, while based upon the need to disarm and to discover evidence, does not depend on what a court may later decide was the probability in a particular arrest situation that weapons or evidence would in fact be found upon the person of the suspect.'

By further analogy, this court cannot say that *Chimel* requires a police officer to weigh the probabilities that a search of an area in the home within the arrestee's immediate control will produce a weapon or destructible evidence. Likewise, we cannot require an officer to weigh the arrestee's probability of success in obtaining a weapon or destructible evidence hidden within his or her immediate control.

Other jurisdictions agree that methods used by police to gain control over an arrestee and his or her actual access to weapons or evidence in the immediately surrounding area do not eviscerate the authority to conduct a limited, contemporaneous search of the home. *See United States v. Palumbo,* 735 F.2d 1095 (8th Cir.) *cert. denied,* 469 U.S. 934 (1984); *United States v. Queen,* 847 F.2d 346 (7th Cir. 1988); *United States v. Silva,* 745 F.2d 840 (4th Cir. 1984); *Watkins v. United States,* 564 F.2d 201 (6th Cir. 1977), *cert. denied,* 435 U.S. 976 (1978); *People v. Hufnagel,* 745 P.2d 242 (Colo. 1987) (en banc).

Accordingly, we conclude that the *Chimel* standard authorizes a contemporaneous, limited search of the area immediately surrounding the arrestee measured at the time of the arrest without consideration to actual accessibility to the area searched. This is a simple, practical rule. Its sanction of a contemporaneous, limited search protects the individual's privacy interests in areas outside his or her immediate control and also serves valid societal interests in protecting officer safety and preserving evidence. Based on this rule, the question becomes whether the area searched in this case was an area within the arrestee's immediate control. We conclude that it was. The search is therefore reasonable per se under *Chimel*. As a consequence, we conclude that the trial court erred in suppressing the rifle, and we agree with the court of appeals that the suppression order must be reversed.

However, because we uphold the *Chimel* standard as the rule controlling searches incident to arrest in the home, we reject the two-part test adopted by the court of appeals. The first prong of the court of appeals test redefines the *Chimel* standard to state by law the area within the arrestee's "immediate control." The area is defined as the "room in which the arrest is made, including a contiguous open area such as a closet or pantry." *State v. Murdock,* 151 Wis. 2d at 207. Although an entire room might be an area into which an arrestee might gain access to a weapon or evidence, the *Chimel* standard authorizes a more limited scope of search which recognizes that rooms differ in size, shape and design. Thus, the first part of the court of appeals test, while attractively clear cut on its face, is overly broad. As such, it is in direct conflict with the express language of *Chimel,*

395 U.S. at 763, and *Buie,* 110 S. Ct. at 1098, which rejects a search in the room of arrest of areas outside the area of an arrestee's immediate control too small to hide a possible attacker even though the *Buie* holding clearly sanctions searching areas of that room and areas immediately adjoining it from which a third party might launch an attack regardless of whether those areas are within the arrestee's immediate control and regardless of whether the officer has probable cause or a reasonable suspicion to believe someone is hiding therein.

The second prong of the court of appeals test allows as reasonable a search of the area defined in the first prong if "the arresting officers have reasonable grounds to conclude that weapons or destructible evidence might be present in that room." *Murdock,* 151 Wis. 2d at 207. (Footnote omitted.) We reject such a limitation on the authority to conduct a limited search incident to arrest. This court in *Fry,* 131 Wis. 2d at 168–70, did not require that the arresting officer have an individualized suspicion as a predicate to conducting a search incident to arrest. *See Buie,* 110 S. Ct. at 1099; *Robinson,* 414 U.S. at 235.

Therefore, we conclude that the search of the pantry area was reasonable as it was within the standard set by *Chimel* for a search incident to arrest. We affirm the court of appeals mandate reversing the trial court order suppressing the rifle. We remand the matter to the trial court for further proceedings consistent with this opinion.

*By the Court.*—The decision of the court of appeals is affirmed and the case is remanded to the circuit court.

SHIRLEY S. ABRAHAMSON, J. (dissenting). Police safety is of paramount importance in fourth amendment jurisprudence. Law enforcement

officers cannot reliably predict the danger that may exist when they execute a warrant. We need clear, straightforward rules that accommodate the safety needs of the police and at the same time honor the constitutional guarantees against unreasonable searches dictated by the fourth amendment.

The court of appeals sought to create a clear rule and to uphold the fourth amendment's requirement of reasonableness by requiring that "the arresting officers have reasonable grounds to conclude that weapons or destructible evidence might be present in that room." *State v. Murdock,* 151 Wis. 2d 198, 207, 445 N.W.2d 319 (Ct. App. 1989). The majority opinion abandons the reasonable grounds requirement and the room limitation set forth by the court of appeals.

The majority opinion holds that law enforcement officers need not have reasonable suspicion before conducting the search in a home incident to an arrest. Majority op. at 237. The majority opinion concludes that a search in a home incident to an arrest is reasonable per se if the search is confined to the "immediate area" surrounding the arrestee at the time of his arrest without having to consider the arrestee's "actual accessibility to the area searched." Majority op. p. 236. Without a reasonableness standard or an "actual access" standard the boundaries of the "immediate area" and therefore the boundaries of a constitutional search are not clear.

The majority opinion's decision apparently applies *New York v. Belton,* 453 U.S. 454 (1981), a case involving search of a car incident to an arrest, to this case involving a search of a home incident to an arrest. I do not believe a car and a home can be equated in search and seizure law.

I believe that the majority opinion contravenes the standards set forth by the United States Supreme Court

in *Chimel v. California,* 395 U.S. 752 (1969), and *Maryland v. Buie,* — U.S. —, 58 U.S.L.W. 4281 (1990).