STATE of Wisconsin, Plaintiff-Respondent,

v.

Vincent S. ANGIOLO, Defendant-Appellant.

Court of Appeals

*No. 93–1366–CR. Submitted on briefs December 28, 1993.—Decided July 27, 1994.*

(Also reported in 520 N.W.2d 923.)

488

490

On behalf of the defendant-appellant, the cause was submitted on the brief of *John Miller Carroll* and *Kevin Patrick Burke* of *John Miller Carroll Law Office* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Mary V. Bowman*, assistant attorney general.

Before Brown, Nettesheim and Snyder, JJ.

SNYDER, J.   Vincent S. Angiolo was convicted upon a plea of no contest to two counts of receiving stolen property. The counts were entered following the denial of his motion to suppress certain evidence seized in a search of his rental storage garage. The issue is whether the officer's warrantless search of Angiolo's storage garage and subsequent seizure of physical evidence was valid under any exception to the Fourth Amendment's warrant requirement. We agree with Angiolo and conclude that the search and seizure violated his Fourth Amendment rights. Accordingly, we reverse.

## I.   FACTS

On October 9, 1990, a witness observed a red Dodge pickup truck in the vicinity of an attempted burglary and reported the license number and description of the driver to the Menomonee Falls police department. The police later determined that the truck was licensed to Angiolo. According to the report, nothing was actually stolen from the scene of the alleged attempted burglary.

The next day, Officer James Stanek was dispatched to a rental storage facility located approximately ten blocks from the attempted burglary scene. Upon arriving, Stanek observed a red pickup truck parked halfway into one of the rental garages. Both the pickup truck and the driver matched the description provided to police of those involved in the previous night's attempted burglary. Stanek approached the open garage and spoke with the driver of the red pickup, who identified himself as Angiolo. While standing outside of the garage, Stanek observed a stack of copper wire, aluminum tubing, an engine block and a hoist connected to the ceiling. In addition,

492

Stanek observed various "auto mechanic things" located in the bed of the truck. Stanek believed these items were of the type that might be stolen and sold for scrap.

Based on these observations, Stanek asked Angiolo to come to the police station to answer some questions, which Angiolo agreed to do. Stanek requested Angiolo to move his truck out of the garage and Angiolo complied. As Angiolo pulled his truck out, Stanek observed what he believed was a professional welding unit inside the garage. Angiolo got out of the truck and attempted to close the garage door. Stanek ordered him to stop, but Angiolo continued to close the door. Stanek then placed Angiolo under arrest for suspicion of burglary and transporting stolen goods. After the arrest, police photographed the entire contents of the garage and seized the welder and other items that they suspected were stolen.[1]

Angiolo had a somewhat different version of the events. He testified that he attempted to close the garage door but was unable to do so because some copper wire was sticking out on the floor of the garage. According to Angiolo, another officer who had arrived at the scene motioned for Stanek to enter the garage after Angiolo expressly denied permission. Stanek then opened the garage door and entered, at which time he observed the welding unit. Angiolo testified that he was arrested only after Stanek entered and fully searched the garage.

---

[1] It is unclear from the record exactly what was seized from the garage. Stanek testified that he seized the welder and six automatic transmissions. The State in its brief concedes that "presumably, the items referenced in the four counts of the complaint were seized . . . and later identified as stolen." Therefore, we will use the same presumption in our analysis.

Based on the evidence seized from the garage, Angiolo was charged with four counts of receiving stolen property, including the welder, contrary to § 943.34(1)(a) and (b), STATS.[2] Angiolo moved to suppress the evidence gained from the search of the garage. Prior to the motion hearing, Angiolo entered into a stipulation whereby he agreed to plead no contest to two charged counts if his motion to suppress was denied.

The trial court denied Angiolo's motion to suppress, ruling that the officer was within his authority to conduct a search of the storage garage along with the arrest. Pursuant to the plea agreement, Angiolo was convicted of two counts of receiving stolen property. The remaining two charges and an attempted burglary charge were dismissed and read in for sentencing.

## II. STANDARD OF REVIEW

Angiolo argues that the warrantless search and seizure violated his Fourth Amendment rights and the trial court erred in denying his motion to suppress. We will uphold a trial court's findings of evidentiary and historical facts unless they are clearly erroneous. *State v. Turner*, 136 Wis. 2d 333, 343-44, 401 N.W.2d 827, 832 (1987). However, the validity of a search and seizure involves constitutional questions subject to independent appellate review and requires an independent application of the constitutional principles

---

[2] Specifically, Angiolo was charged with two felony counts of receiving stolen property contrary to § 943.34(1)(b), STATS., related to the welder and various castings, and two misdemeanor counts of receiving stolen property contrary to § 943.34 (1)(a), related to scrap transmissions.

involved to the facts as found by the trial court. *Id.* at 344, 401 N.W.2d at 832-33.

On appeal, the State contends that "[t]he theoretical basis for [Angiolo's] motion to suppress is not entirely clear." Much of the uncertainty on appeal centers around the trial court's failure to make specific findings of fact regarding when Angiolo was arrested and when the police searched the garage and seized the items subsequently determined to be stolen. In concluding that the arrest and search were lawful, the trial court stated:

> Based on all the information that the officer had from the prior night's report, the description of the vehicle and the individual, being able to view the items of the storage facility, the testimony of the officer and the defendant, under all these circumstances and statements I am satisfied that there is an exception to the search warrant [requirement]. I am satisfied that the officer was within his lawful authority to conduct a full search of the items within that storage area along with the arrest of the defendant.

We read the trial court's decision as justifying the search as either incident to a lawful arrest or under the plain view doctrine. Although the trial court did not make specific findings of fact regarding the events surrounding the arrest, the court apparently resolved the credibility determination in favor of the officer. When the testimony presented at the hearing conflicts, the trial court is the ultimate arbiter of the credibility of witnesses. *State v. Baudhuin,* 141 Wis. 2d 642, 647, 416 N.W.2d 60, 62 (1987). Further, if a trial court fails to make a finding of fact that appears from the record to exist, an appellate court may assume the fact was

determined in support of the decision. *See State v. Gollon*, 115 Wis. 2d 592, 600-01, 340 N.W.2d 912, 916 (Ct. App. 1983). Stanek testified that the inventory search and subsequent seizure occurred after the arrest. Therefore, we will apply these facts to the constitutional questions at issue.[3]

## III. VALIDITY OF STOP AND OBSERVATIONS

Angiolo first argues that Stanek's visual observation of the contents of the garage prior to his arrest of Angiolo constitutes an illegal search. We agree with the State that Stanek was authorized to conduct a *Terry*[4] investigative stop to question Angiolo based

---

[3] On direct examination, Stanek clearly testified that the search occurred after the arrest:

Q. So after you placed him under arrest, what happened next?

A. Mr. Angiolo was placed into another vehicle and returned to the station. I remained and looked at the items, made a closer inspection and I called for a photographer to take photographs of the items and of the warehouse.

Q. Now, after you arrested Mr. Angiolo you entered the storage, is that correct?

A. That's correct.

Angiolo's contention that the search occurred prior to his arrest is based on Stanek's testimony on cross-examination in which he answered "Yes" to the question "So the search of the items happened before the arrest took place, didn't it?" Based on our review of the record, Angiolo takes Stanek's answer out of context. The question posed was in the context of what Stanek could see standing in the opening of the garage door prior to the arrest. Therefore, we read Stanek's answer as relating to his visual observations, not his physical entry and inventory search of the garage.

[4] *Terry v. Ohio*, 392 U.S. 1 (1968).

upon his observation of the pickup and the driver matching the description of those involved in the previous night's attempted burglary. Further, Stanek's act of looking into the open garage while questioning Angiolo within the context of the investigative stop does not constitute a search. A visual inspection of items which come into view during a legal invasion of privacy does not constitute an independent search because it produces "no additional invasion of [the suspect's] privacy interest." *See Arizona v. Hicks*, 480 U.S. 321, 325 (1987) (holding that an inspection that merely involves looking at what is already exposed to view without disturbing it is not an independent search).

The State contends that Angiolo's appeal challenges only the observations made by Stanek during the *Terry* stop. As a result, the State declined to address the validity of the resulting inventory search of the garage and seizure of the physical evidence. We disagree with the State that Angiolo's appeal is limited to the officer's prearrest observations. Although Angiolo's argument may not be as expertly crafted as the State would like, Angiolo clearly contests the warrantless search and ultimate seizure of the items from the garage.[5] Therefore, we must decide whether the warrantless search was valid under any of the recognized exceptions to the warrant requirement.

---

[5] For example, Angiolo challenges the seizure of the evidence without a warrant as not justified under the plain view doctrine because the officer did not have probable cause to believe that there was a connection between the welding unit and criminal activity.

## IV. VALIDITY OF SEARCH AND SEIZURE

■

It is fundamental that warrantless searches are per se unreasonable, and the State bears the burden of proving that the search and seizure at issue falls within one of a few, narrowly drawn exceptions. *State v. Milashoski*, 159 Wis. 2d 99, 110-11, 464 N.W.2d 21, 25-26 (Ct. App. 1990), *aff'd*, 163 Wis. 2d 72, 471 N.W.2d 42 (1991). As stated earlier, we read the trial court's decision as justifying the search under either the plain view or search incident to arrest exceptions. We agree with Angiolo that the search and seizure in this case are not valid under either of these exceptions or any other exception to the Fourth Amendment's warrant requirement.

### A. Search Incident to Arrest

■

One recognized exception to the warrant requirement is the search incident to an arrest. *See Chimel v. California*, 395 U.S. 752 (1969); *State v. Murdock*, 155 Wis. 2d 217, 227, 455 N.W.2d 618, 622 (1990). In *Chimel*, the United States Supreme Court held that given a lawful arrest, the arresting officer may search the person arrested and the immediate surrounding area. *Chimel*, 395 U.S. at 763. Relevant to the present case, the *Chimel* Court concluded:

> There is ample justification, therefore, for a search of the arrestee's person and the area "within his immediate control"—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence.

*Id. Chimel* therefore defines the area of "immediate control" subject to search incident to a valid arrest as "the area from within which [the arrestee] might gain possession of a weapon or destructible evidence." *Murdock*, 155 Wis. 2d at 229, 455 N.W.2d at 623 (quoting *Chimel*, 395 U.S. at 763).

Both Angiolo and the State focus their arguments on whether the inside of the garage was within Angiolo's "immediate control." Angiolo contends that it was not, because he was never inside while Stanek was present, the garage door was closed and there was no danger that he would resist or destroy any evidence since he agreed to go to the police station. The State argues that Stanek thwarted Angiolo's attempt to close the door and that the area immediately surrounding Angiolo extended "from about a truck-length outside to half a length inside the [garage]."

We agree with the State that the garage may have been within Angiolo's "immediate control" as that phrase has been interpreted by our supreme court. *See Murdock*, 155 Wis. 2d at 236, 455 N.W.2d at 626 (holding that "the *Chimel* standard authorizes a contemporaneous, limited search of the area immediately surrounding the arrestee measured at the time of the arrest without consideration to actual accessibility to the area searched"). Nevertheless, a determination that an area was within a defendant's immediate control does not give police the authority to generally search the premises. Stanek may have been justified in making a *limited* search for accessible weapons and destructible evidence contemporaneous with the arrest. However, the State fails to show how the much broader inventory search of the garage and subsequent

499

seizure of the items are justified under the search incident to arrest doctrine. We conclude that they are not.

*Chimel* clearly does not condone the warrantless general search engaged in by the police in this case. *See Murdock*, 155 Wis. 2d at 229 n.5, 455 N.W.2d at 623. Rather, the Supreme Court emphasized:

> "[T]he police must, whenever practicable, obtain advance judicial approval of searches and seizures through the warrant procedure" and that "[t]he scope of [a] search must be strictly tied to and justified by' the circumstances which rendered its initiation permissible."

*Chimel*, 395 U.S. at 762 (quoting *Terry v. Ohio*, 392 U.S. 1, 19, 20 (1968)) (citation omitted). In this case, the breadth of the search clearly exceeded any protective purposes it may have initially served. Such a "top-to-bottom" search cannot be allowed simply because some interference with an individual's privacy has lawfully taken place. *Chimel*, 395 U.S. at 766 n.12.

### B.  *"Plain View" Exception*

The trial court's decision denying Angiolo's motion to suppress also implies that the warrantless search in this case may be justified under the plain view exception to the warrant requirement.[6] *See Coolidge v. New Hampshire*, 403 U.S. 443 (1971); *Bies v. State*, 76 Wis. 2d 457, 251 N.W.2d 461 (1977). Under the plain view

---

[6] The trial court stated in part:

As far as the search of the warehouse itself. The defendant indicated that the officer would not have been able to see the welding unit if he was standing outside. The officer testified to the opposite of that. That even though the welding unit was inside it could have been seen if standing in the doorway.

exception, a seizure may be justified where the following criteria are met:

> (1) The officer must have a prior justification for being in the position from which the "plain view" discovery was made;
> (2) The evidence must be in plain view of the discovering officer;
> (3) The discovery must be inadvertent; and
> (4) The item seized, in itself or in itself with facts known to the officer at the time of the seizure, provides probable cause to believe there is a connection between the evidence and criminal activity.

*Bies*, 76 Wis. 2d at 463-64, 251 N.W.2d at 464-65.

■■■

We conclude that the first three requirements of the plain view doctrine are met in this case. Stanek's valid *Terry* stop provided the prior justification for his being in front of the garage where he was able to view its contents. Further, there is no evidence to indicate that the police knew in advance that there were stolen items in the garage which they intended to seize—a so-called " '*planned* warrantless seizure.' " *Bies*, 76 Wis. 2d at 473, 251 N.W.2d at 469 (quoting *Coolidge*, 403 U.S. at 471 n.27). Therefore, the inadvertence requirement is also satisfied.

However, the fourth criterion of the plain view doctrine requires that the officer must have probable cause to believe that the object seized is in itself, or in itself with facts known to the officer, connected to the commission of a crime. "The plain view doctrine excuses the requirement of a warrant, but it does not permit the police to effect a seizure without probable cause." *Id.* at 474, 251 N.W.2d at 469. Were it otherwise, police could make wholesale seizures of items which they would necessarily observe while lawfully

carrying out an arrest or other lawful duties on the premises. *See* 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 6.7(a), at 712 (2d ed. 1987).

The requirement of probable cause does not demand in this case that Stanek had knowledge showing that the items he saw were stolen beyond a reasonable doubt. *See Bies*, 76 Wis. 2d at 475, 251 N.W.2d at 470. Rather, the test is whether he had knowledge that would lead a reasonable police officer to believe that the items were stolen. *See id.* Based upon the record before us, we cannot conclude that Stanek had probable cause to believe that there was a connection between the evidence seized and criminal activity.

Stanek testified that he observed "a large stack of multi-colored wire which was copper . . . [an] engine block, other large aluminum tubing, quite a bit of other wire, a large hoist connected to the ceiling and [a] large awkward box." Stanek further testified that he "thought that possibly these items might have been stolen according to the previous night's record" and opined that they could be "taken to another scrap yard and resold."

The fatal flaw with Stanek's reasoning is that the previous night's record on which he relied to infer that the garage contained stolen items was of an attempted burglary where nothing was reported stolen. Stanek admitted that he had no prior knowledge that the items in the garage may have been stolen:

> Q. The fact that there was nothing taken, the fact that the copper wiring was inside the facility would lead you to conclude that this pick-up was involved in the attempted burglary the night before?

A. That's not correct.

Q. Okay, so you have no idea what possibly could have been taken in that attempted burglary.

A. No, I was not there.

. . ..

·Q. You had no reason to believe that the welder had been a welder taken from any attempted burglary that occurred the day before?

A. No, not the day before, that's correct.

Further, possession of the items observed by Stanek in the garage is not a crime in and of itself, nor do the items observed by Stanek stand out as contraband absent other incriminating information known to police.[7] The only thing known to police prior to making contact with Angiolo was that he was seen driving near

---

[7] We consider the facts of this case to be distinguishable from those in *Bies v. State*, 76 Wis. 2d 457, 251 N.W.2d 461 (1977). In *Bies*, the officer was responding to a noise complaint when his attention was drawn to the defendant's garage. The officer observed twenty-five to fifty feet of telephone cable lying around when he shined his flashlight into an open rear doorway. The officer subsequently returned and seized a piece of the cable without a warrant. *Id.* at 460-62, 251 N.W.2d at 463-64. In upholding the seizure based on the plain view doctrine, the court noted that the officer had no knowledge that any cable of the type he observed had been stolen and that possession of such cable is not a crime in and of itself. However, the court deemed it significant that the officer knew from his prior experience as an electric company employee that the cable was telephone cable and that it could not legally be obtained by parties other than telephone companies. In addition, the officer knew that telephone cable was being laid at a nearby location and therefore was vulnerable to theft. *Id.* at 474-75, 251 N.W.2d at 470.

the site of an attempted burglary near his storage garage. Based on this information alone, we do not think it is reasonable to believe that Angiolo's entire garage contained stolen goods.

■

Accordingly, we conclude that the plain view exception is not satisfied in this case because Stanek did not have probable cause to believe that the objects seized were connected to the commission of a crime. Nor do we see any other exception to validate the search in this case.[8]

## V. CONCLUSION

"The ultimate standard under the Fourth Amendment is the reasonableness of the search or seizure in light of the facts and circumstances of the case." *Bies*, 76 Wis. 2d at 468, 251 N.W.2d at 466. The reasonableness standard is an objective one:

> "[In] determining whether the officer acted reasonably . . . due weight must be given, not to his inchoate

---

By contrast, the record in this case is devoid of any evidence indicating that police knew anything more than that Angiolo's pickup was seen near the site of an attempted burglary the night before. Stanek's inferences that the items in Angiolo's garage were stolen might have been reasonable if, for example, the site of the attempted burglary was a place where the items could normally be found or if police had previous reports of similar items being stolen in the area. However, our review is limited to those portions of the record before us. *Ryde v. Dane County Dep't of Social Servs.*, 76 Wis. 2d 558, 563, 251 N.W.2d 791, 793 (1977).

[8] *See State v. Milashoski*, 159 Wis. 2d 99, 111-12, 464 N.W.2d 21, 26 (Ct. App. 1990), *aff'd*, 163 Wis. 2d 72, 471 N.W.2d 42 (1991) (listing recognized exceptions to warrant requirement).

and unparticularized suspicion or hunch,' but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience."

*Id.* at 466, 251 N.W.2d at 466 (quoting *Terry*, 392 U.S. at 27). Based on the record before us, we conclude that the officer's belief that the items in the garage were stolen was nothing more than a mere hunch and the resulting general exploratory search and wholesale seizure of physical evidence are of the type expressly prohibited by the Fourth Amendment.

We reverse and remand this case for further proceedings consistent with this opinion.

*By the Court.*—Judgment reversed and cause remanded with directions.