OPINION
{¶ 1} Eric Dorney appeals from his conviction in the Montgomery County Court of consumption of alcohol while under age 21 in violation of R.C.4301.632 pursuant to a no contest plea.
 {¶ 2} The facts underlying this appeal are not in dispute. On January 18, 2002, Officer Kim Griffin of the Riverside Police Department responded to a residence in Riverside on the report of a local party with underage drinking. Upon arriving at the residence, Officer Griffin observed approximately 50 cars parked bumper to bumper on both sides of the residential street. As she approached the residence where the loud noise was emanating she could smell alcohol and she observed several persons inside the residence who appeared to be underage. A sign at the front door directed her to the rear of the residence where the back door was open but the screen door was closed.
 {¶ 3} Officer Griffin said she opened the screen door and asked the first person she saw for a resident. The first person did not know who lived there but a second person coming up the basement stairs said he would find the resident for her. While just inside the door, Officer Griffin said she observed that the house was "wall to wall" with young people ranging from 16 to mid-twenties in age and it was extremely loud. Officer Griffin said she followed the person who was looking for the resident down the basement steps.
 {¶ 4} While in the basement, Officer Griffin, when she couldn't find the resident owner or tenant, cited 12 underage persons for underage consumption of alcohol. While she was in the basement, Sergeant Asbury apparently entered the front door, confronted the defendant who admitted that he was consuming alcohol while underage. In the course of asking the occupants of the house to leave, the officers discovered a young female unconscious in a bedroom from alcohol poisoning.
 {¶ 5} In overruling the defendant's motion to suppress the trial court made the following observations:
 {¶ 6} "THE COURT: I'll make this real brief just for purposes of the record for documentation for appeal purposes.
 {¶ 7} "It seems to me that it was rather clear that there was a plain view aspect to ongoing crime as related to consumption of alcohol under age. It also seems as though there was continuing violations that related to the loud music. Whether or not you define that as some kind of music or disorderly conduct statute or however you look at it, neighbors are not going to have to sit around and wait while all this malarkey's going on for someone to determine who the owner is or let them go in. When, you know, the police are there and there's an ongoing violation, they have a right to terminate that violation.
 {¶ 8} "As a result of that, I believe that they had a right to enter that residence. I don't know if you want to label that under exigent circumstances or what, you know. They had a right to go in and put a squelch to it.
 {¶ 9} "And anyhow I'm going to overrule your motion. We thank you all for coming in.
 {¶ 10} "(Proceedings concluded)."
 {¶ 11} Appellant contends the trial court erred in denying his suppression motion because there were no exigent circumstances that would justify the officer's entry into the defendant's house without a search warrant or permission. Appellant relies on the case of Welsh v.Wisconsin, 466 U.S. 750 (1984) wherein the United States Supreme Court held that the warrantless night time entry of a suspect's home to arrest him for a civil, non-jailable traffic offense, was prohibited by the special protection afforded the individual in his home by the Fourth Amendment. The court further held:
 {¶ 12} "Our hesitation in finding exigent circumstances, especially when warrantless arrests in the home are at issue, is particularly appropriate when the underlying offense for which there is probable cause to arrest is relatively minor. Before agents of the government may invade the sanctity of the home, the burden is on the government to demonstrate exigent circumstances that overcome the presumption of unreasonableness that attaches to all warrantless home entries. See Payton v. New York,supra, 445 U.S., at 586, 100 S.Ct., at 1380. When the government's interest is only to arrest for a minor offense, that presumption of unreasonableness is difficult to rebut, and the government usually should be allowed to make such arrests only with a warrant issued upon probable cause by a neutral and detached magistrate." Id. at 751.
 {¶ 13} The Sixth Circuit distinguished Welsh in U.S. v. Rohrig (6th
Cir. 1996), 98 F.3d 1506. In that case the court held that police officers' warrantless entry into the defendant's home in the middle of the night to turn down loud music that was disturbing neighbors, after unsuccessful attempts to contact the occupant, was justified by exigent circumstances, given that time was of the essence due to continuing noise, that officers entered the home to vindicate compelling governmental interest in restoring neighbors' peaceful enjoyment of their homes and neighborhood, and that the defendant undermined his right to be left alone by projecting loud noises into the neighborhood. The court observed at pages 1521-1522 of the opinion:
 {¶ 14} "First, the Canton police officers undoubtedly confronted a situation in which time was of the essence. The officers testified that they arrived at Defendant's residence in the middle of the night in response to complaints from neighbors, and that they could hear loud music at least a block away from the home. Upon their arrival at the scene, they were confronted by an irate group of pajama-clad neighbors. Had the officers attempted to secure a warrant, it is clear that the aural assault emanating from Defendant's home would have continued unabated for a significant period of time. Thus, if we insist on holding to the warrant requirement under these circumstances, we in effect tell Defendant's neighbors that `mere' loud and disruptive noise in the middle of the night does not pose `enough' of an emergency to warrant an immediate response, perhaps because such a situation `only' threatens the neighbors' tranquility rather than their lives or property. We doubt that this result would comport with the neighbors' understanding of `reasonableness.' Further, because nothing in the Fourth Amendment requires us to set aside our common sense, we decline to read that Amendment's `reasonableness' and warrant requirements as authorizing timely governmental responses only in cases involving life-threatening danger.
 {¶ 15} "Next, we find that the officers entered Defendant's home in order to vindicate a compelling governmental interest. To be sure,Welsh, supra, teaches that the weight of a governmental interest should be measured in part by the severity of the offense being investigated. In the instant matter, Defendant was cited only for a civil violation of a Canton noise ordinance. This might seem to suggest that no vital governmental interest was served by the warrantless entry into Defendant's home.
 {¶ 16} "However, we believe that the Welsh analysis has less relevance as one moves away from traditional law enforcement functions and toward what the Supreme Court has referred to as `community caretaking functions.' Cady v. Dombrowski, 413 U.S. 433, 441, 93 S.Ct. 2523, 2528,37 L.Ed.2d 706 (1973); see also United States v. Johnson, 9 F.3d 506, 510
(6th Cir. 1993); cert. denied, U.S. ___, 114 S.Ct. 2690, 129 L.Ed.2d 821
(1994). To determine the weight of the governmental interest at stake in this case solely by reference to the minor penalty the City of Canton imposes for violations of its noise ordinance would ignore a crucial distinction between Welsh and the instant case. Unlike in Welsh, the officers here did not enter a private home for the purpose of questioning a suspect or searching for evidence of a suspected offense. Because their aim was not to track down a suspected violator of a local ordinance, we find it inappropriate to gauge the government's interest by looking only to that evidence.
 {¶ 17} "Rather, by entering Defendant's residence for the limited purpose of locating and abating a nuisance, the officers sought to restore the neighbors' peaceful enjoyment of their homes and neighborhood. In view of the importance of preserving our communities, we do not think that this interest is so insignificant that it can never serve as justification for a warrantless entry into a home. To the contrary,Camara and its progeny recognize that important governmental interests may be at stake even in the absence of life-or-death circumstances. See,e.g., T.L.O., 469 U.S. at 340, 105 S.Ct. at 742 (citing a school's `legitimate need to maintain an environment in which learning can take place'); see also United States v. Brown, 64 F.3d 1083, 1086 (7th Cir. 1995) (`We do not think that the police must stand outside an apartment, despite legitimate concerns about the welfare of the occupant, unless they can hear screams.') Indeed, under Ohio law, Canton police officers are expressly charged with the duty to `preserve the peace.' Ohio Rev. Code Ann. § 737.11. In addition, Canton's enactment of an ordinance prohibiting use of `any noise-making device' in such a manner that `the peace or good order of the neighborhood is disturbed.' Canton, Ohio, General Code § 509.12, shows that the Canton community attaches great importance to its citizens' interest in maintaining peaceful neighborhoods.
 {¶ 18} "We conclude, therefore, that the governmental interest in immediately abating an ongoing nuisance by quelling loud and disruptive noise in a residential neighborhood is sufficiently compelling to justify warrantless intrusions under some circumstances. Cf. Carey v. Brown,447 U.S. 455, 471, 100 S.Ct. 2286, 2295, 65 L.Ed.2d 263 (1980) (`Preserving the sanctity of the home, the one retreat to which men and women can repair to escape from the tribulations of their daily pursuits, is surely an important value.'); Bies v. State, 76 Wis.2d 457,251 N.W.2d 461, 468 (1977) (finding that the early morning investigation of a noise complaint is `part of the `community caretaker' function of the police which, while perhaps lacking in some respects the urgency of criminal investigation, is nevertheless an important and essential part of the police role'). In particular, a compelling governmental interest supports warrantless entries where, as here, strict adherence to the warrant requirement would subject the community to a continuing and noxious disturbance for an extended period of time without serving any apparent purpose.
 {¶ 19} "Moreover, as discussed earlier, Camara and its progeny instruct us to balance the governmental interest being served against the individual's interest in remaining free from governmental intrusions. In light of Defendant's course of conduct, we find that he cannot claim the degree of privacy protection that generally attaches to private dwellings. See Katz, 389 U.S. at 351, 88 S.Ct. at 511 (`[T]he Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection.'). Just as one's expectation of privacy diminishes as he ventures beyond his doorway, see Santana, supra, 427 U.S. at 42,96 S.Ct. at 2409, Defendant here undermined his right to be left alone by projecting loud noises into the neighborhood in the wee hours of the morning, thereby significantly disrupting his neighbor's peace. Indeed, in this case, we cannot protect Defendant's interest in maintaining the privacy of his home without diminishing his neighbors' interests in maintaining the privacy of their homes. Accordingly, we find that the governmental interest in preserving a peaceful community is all the more compelling when balanced against Defendant's substantially weakened interest in maintaining the privacy of his home.
 {¶ 20} "Finally, in a case not strictly governed by precedent, we necessarily must revisit the fundamental principles underlying the Fourth Amendment. As we have seen, that Amendment defines two unwavering standards. First, its Warrant Clause commands that the Government shoulder the heavy burden of justifying any warrantless entry into a private home. Second, its Reasonableness Clause commands that any Government intrusion, whether authorized by a warrant or not, be reasonable. We conclude that the Canton police officers' warrantless entry into Defendant's home violated neither of these constitutional principles."
 {¶ 21} We find the holding in U.S. v. Rohrig to be persuasive. Officer Griffin entered the basement only after initial efforts at a loud crowded party to find the defendant were unsuccessful. In any event, it was Sergeant Ashbury who actually encountered the defendant after he entered the front door of the defendant's residence. The purpose of the police entering the defendant's residence was twofold; namely to abate the noise which prompted the police to be called in the first place and to determine if there was underage drinking going on inside the residence. The defendant quite clearly undermined his right to be left alone by the police by projecting loud noises into the neighborhood. It was not reasonable to expect the police to obtain a search warrant under these circumstances. The trial court properly determined that the identity of the defendant should not have been suppressed nor any evidence that he provided alcohol to minors in violation of law. The assignment of error must be overruled.
 {¶ 22} The judgment of the trial court is Affirmed.
Wolff, J., and Grady, J., concur.