State of Wisconsin, Plaintiff-Respondent,
v.
Calvin R. Herzog, Defendant-Appellant.
No. 2005AP2184-CR.
Court of Appeals of Wisconsin, District II.
Opinion Filed: June 21, 2006.
Before Snyder, P.J., Brown and Anderson, JJ.
¶1BROWN, J.
Calvin R. Herzog pled guilty to possessing marijuana with intent to deliver after his motion to suppress a search of a vehicle was denied. The trial court held that the search was justified under the "plain view" doctrine, and Herzog disputes the decision. We hold that the factual basis found by the court to support its "plain view" holding is clearly erroneous. And while we recognize that we may affirm on grounds other than those relied upon by the trial court, the facts which would support the State's position that the search was incident to arrest are in dispute. We reverse the judgment of the trial court and remand with specific directions for further fact finding.
¶2 The transcript reveals the following: On February 27, 2005, a sergeant for the Washington County Sheriff's Department monitored a traffic stop where the driver and passenger were subsequently released. After that, the sergeant heard a radio transmission from a dispatcher for the City of West Bend, which he referred to as a "delayed hit," advising that one of the occupants in the released vehicle, Ryan Krchma, was wanted on three outstanding warrants. Armed with information that the driver of the released vehicle had indicated that he was heading home, the sergeant decided to drive his squad car to that location. There, he waited until the suspect vehicle arrived. When that vehicle arrived and parked in the driveway, the sergeant pulled in immediately behind.
¶3 Both occupants opened their doors and quickly exited the vehicle. They were just starting to move away from the vehicle when the sergeant ordered them to stop and come back to the rear of their vehicle. The sergeant informed them that he had information that Krchma had outstanding warrants and needed to know who was who. The passenger identified himself as Krchma and Herzog was identified as the driver. The sergeant advised Krchma that he was under arrest and informed Herzog that he was not needed any longer. Herzog immediately turned around and rapidly entered his residence. Krchma was patted down, secured with handcuffs and placed in the back seat of the squad.
¶4 At this point, either one or both of Herzog's parents came out and asked the sergeant what was going on. The sergeant responded that Krchma had outstanding warrants and was being taken into custody. The sergeant planned to transport Krchma to the Washington County Sheriff's Department. A "civil discussion" then ensued with the parents where the sergeant informed them that the warrants were all bondable, and there was some discussion about whether they could bond him out and how much it would take. The sergeant obtained the amount needed for the total bond through the dispatcher.
¶5 Up to this time, the facts are largely undisputed. What comes next, however, is disputed, and the importance of this factual dispute impacts our disposition of this matter. According to the sergeant, this is what occurred:
I had Mr. Krchma in custody in the car, and at that point I made the announcement, I don't know if it was to the parents or just in general, that I'd be searching the vehicle. Calvin Herzog had come out of the house in the meantime and objected against me searching the vehicle; indicated that I could not.
When asked why did he search the vehicle, the sergeant replied:
Well, it was not only [a] search incident to arrest in that I arrested Mr. Krchma, but prior to actually entering the vehicle, I had illuminated the interior driver's compartment back and front seat area floor boards and I observe a bottle of Jim Beam Whiskey ... partially under the seat and partially exposed on the floor board....
I had known at that point then both occupants of the vehicle; one was only 18, and one was 19 at the time of the stop, that neither one could legally transport intoxicants in the vehicle, so I had the plain view of the alcohol in the back seat as well.
¶6 Further questioning of the sergeant confirmed that the observation of the whiskey bottle occurred after the sergeant told the parents that he was going to search the vehicle and the observation was made at the beginning of his search incident to arrest. As is his custom at night, the sergeant began his search by illuminating his flashlight into the vehicle for safety reasons. And it was at this point that he was able to see the whiskey bottle. The sergeant estimated that the time between the stop and the search was "probably between five and ten minutes" and the time delay was a result of discussing the warrant situation with the parents. The search uncovered not only the whiskey bottle, but also an ice cream tub containing marijuana.
¶7 Robert Herzog, Herzog's father, told a different story. Robert largely agreed with the sergeant on the time interval between the arrest and the search. He estimated that the time between Krchma's arrest and the search lasted about ten minutes. But Robert also testified as follows: During this time, Herzog was on the phone trying to get a hold of Krchma's parents and was attempting to obtain the bond money for his friend. Another squad pulled up. Herzog entered the hallway near where the discussion with the sergeant was taking place and said, "[W]hat the `F' is going on here? There's more cops coming." At this point, the sergeant commented, "I don't like his attitude. I think there's contraband in that vehicle. I'm going to search it." Robert objected and wanted a warrant, but the sergeant replied that he could take it up with his lawyer and that he was going to impound the vehicle.
¶8 The trial court held that the search was justified under the "plain view" doctrine. The trial court no doubt was aware that a seizure of evidence in "plain view" is permitted when, first of all, the officer had a prior justification for being in the position from which the "plain view" discovery was made. See Bies v. State, 76 Wis. 2d 457, 463-64, 251 N.W.2d 461 (1977). According to the trial court, the testimony showed that the officer was in such a position. The trial court found:
The deputy ordered both to stand near the back of the vehicle in order to determine who was whom. When it was determined that Herzog was not the person in warrant status, the officer told him he could go into the residence. The other individual, who had the warrants outstanding for him, was placed in the back of the officer's vehicle. Apparently, during the course of the questioning of the individuals, the officer conducted a plain view search, through the vehicle's windows, and saw a partially empty bottle of alcohol. (Emphasis added.)
¶9 This finding is clearly erroneous as our recitation of the transcript shows. No one testified that the "plain view" took place at the time the sergeant was trying to determine who was Krchma and who was not. There is no dispute that the discovery of the whiskey bottle took place as the sergeant was beginning what he termed to be a "search incident to arrest." Thus, the question remains whether the deputy had prior justification for being in the position from which the "plain view" discovery was made. The State, most likely cognizant of the weakness in the trial court's "plain view" finding, starts its brief with the observation that this court may affirm on grounds other than those relied upon by the trial court. It appropriately cites State v. Holt, 128 Wis. 2d 110, 124, 382 N.W.2d 679 (Ct. App. 1985), for this proposition. In the State's view, the sergeant was justified in being in a position to observe the bottle because he had the right to search the vehicle incident to arrest. Thus, according to the State, the sergeant had a right to search incident to arrest and then had additional reason to search upon plain view of the whiskey bottle once the search began. In the following paragraphs, we will explain why we cannot arrive at that conclusion.
¶10 In New York v. Belton, 453 U.S. 454, 460 (1981), the United States Supreme Court held that "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." (Emphasis added; footnote omitted.) Our supreme court adopted the Belton standard in State v. Fry, 131 Wis. 2d 153, 161-76, 388 N.W.2d 565 (1986). The Fry court further stated that the search of a vehicle may be "contemporaneous" with the arrest of a recent occupant of the vehicle "as long as the search begins immediately after the arrest and the defendant remains at the scene." Id. at 180 (emphasis added). A search of the relevant case law reveals, however, that a delay between an arrest and a search is allowed so long as the delay is "reasonable;" the search need not be "immediate" in such cases. See, e.g., United States v. Chadwick, 433 U.S. 1, 15-16 (1977) (search not justified as incident to an arrest "if the search is remote in time or place from the arrest" (emphasis added)), overruled on other grounds by California v. Acevedo, 500 U.S. 565 (1991); United States v. Vasey, 834 F.2d 782, 787 (9th Cir. 1987) (where search "follows closely on the heels of the arrest" officer may search a vehicle even if the arrestee has already been taken away and handcuffed; search occurring thirty to forty-five minutes later too long after the fact); State v. Boursaw, 946 P.2d 130, 132-34 (Wash. Ct. App. 1999). So, the question here is whether the approximately five-to-ten-minute delay between the arrest of Krchma and the search of the Herzog automobile was "reasonable" under the circumstances.
¶11 The answer to the question depends on factual findings that the trial court has yet to make. If the trial court finds, for example, that the sergeant had no intention of searching the Herzog automobile until Herzog exhibited what police officers commonly refer to as "contempt of officer," then the search might well be unreasonable because there was no fear for the sergeant's safety at the time and the purpose of the search was merely a retaliation measure. On the other hand, if the trial court finds that the sergeant would have immediately conducted the search incident to the arrest but for the intervention of Herzog's parents to discuss the possibility of bond, then the search may well be considered reasonable. See, e.g., Boursaw, 976 P.2d at 134 (search reasonable where there was only a ten-minute delay between arrest and search to await arrival of dog that completed the search). In other words, if there is a legitimate reason for the delay, the time interval will be considered reasonable. If the search is initiated for reasons unrelated to the seizure, then it is unreasonable.
¶12 Correlatively, Herzog directs this court to language in the plurality opinion of the United States Supreme Court in Thornton v. United States, 541 U.S. 615 (2004). There, the Court extended the rule of Belton to apply even when the arrested person is handcuffed and secured in the squad car before the search. See Thornton, 541 U.S. at 617-19. The Supreme Court was unconvinced that the securing of a handcuffed defendant in the back seat of a squad deescalated the danger that weapons or contraband might be accessible to the arrestee or occupants of the vehicle.[1]See id. at 618, 620-22. Herzog points out, however, that the Court plurality acknowledged that the "arrestee's status as a `recent occupant' may turn on his temporal or spatial relationship to the car at the time of the arrest and search." See id. at 622. In our view, Thornton provides additional support for the idea that the delay between arrest and search is an important factor that our courts must assess on a case-by-case basis.
¶13 The State argues that the subjective intent of the sergeant regarding why he decided to search the automobile is irrelevant pursuant to United States v. Robinson, 414 U.S. 218 (1973), Brigham City v. Stuart, 126 S. Ct. 1943 (2006), and Fry. We have considered these cases and determine them to be irrelevant to the analysis of this case. Those cases state that the authority to search does not depend on what a court may later decide was the probability in a particular situation that weapons or evidence would in fact be found in a search. See Robinson, 414 U.S. at 235. Thus, the subjective intent of the officer about whether he or she feared for his or her safety or thinks there is actually contraband or weapons in the vehicle is irrelevant.
¶14 But that is not the issue here. The issue is an objective one, basically this: What was the reason for the ten-minute delay? If the sergeant meant to search the vehicle from the get-go but was delayed by an objectively reasonable purpose, the search may still be considered "immediate." If, however, the sergeant never meant to search the car until confronted by the antics of young Herzog, then the delay was unreasonable under the circumstances. In sum, this is the proverbial apples and oranges. The cases cited by the State simply do not play a part in the court's duty to find the objective facts about what happened. We know the stop was made with probable cause. The question is whether the arrestee's status as a "recent occupant" had dissipated after considering the temporal and spatial facts. In finding the objective facts, the sergeant's intent plays a part in the determination of reasonableness. After all, the State consistently argues in every case that Fourth Amendment jurisprudence is grounded in "reasonableness," and that is all this is about.
¶15 Therefore, we reverse the judgment of the trial court. The cause is remanded with directions that the trial court make findings of fact regarding whether the sergeant decided to search the car in retaliation for Herzog's attitude or whether the sergeant's announcement that he was going to search the car was made without regard to any problem the sergeant may have had with Herzog's behavior. If the trial court finds that the sergeant was planning to search the car incident to arrest all along and was delayed only by the parents' questions regarding bond, then the court may consider the delay to have been reasonable and may again deny the motion to suppress and reinstate the judgment. If the trial court finds that the decision to search came as a result of Herzog's actions, then the trial court must consider whether the resultant search was unreasonable as it was not conducted with a purpose consonant with lawful Fourth Amendment police conduct. The trial court may, in its discretion, make such findings based on the existent transcript or may order a supplemental hearing before making the necessary findings. After the findings have been made, the trial court is instructed to apply the historical facts to the law.
By the Court.  Judgment reversed and cause remanded with directions.
NOTES
[1] As Justice O'Connor aptly noted in her concurrence, the state of the law in this area is such that lower court decisions seem now to treat the ability to search a vehicle incident to arrest of a recent occupant as a police entitlement rather than an exception justified only as a means to find weapons the arrestee might use or evidence he might conceal or destroy. See Thornton v. United States, 541 U.S. 615, 624 (2004) (O'Connor, J., concurring). We agree with this observation.